# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Michael Morgalo, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Sandra Gorniak, | : | |
| (SCI Albion Accountant) | : | |
| | : | |
| v. | : | |
| | : | |
| Montgomery County Clerk of | : | |
| Courts, | : | No. 489 M.D. 2013 |
| Respondents | : | Submitted: February 11, 2015 |

BEFORE:    HONORABLE DAN PELLEGRINI, President Judge[1]
                HONORABLE BONNIE BRIGANCE LEADBETTER, Judge[2]
                HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE ROBERT SIMPSON, Judge
                HONORABLE MARY HANNAH LEAVITT, Judge[3]
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE ANNE E. COVEY, Judge

OPINION BY
JUDGE COVEY                      FILED: March 8, 2016

        Michael Morgalo (Morgalo), pro se, filed a Request to Stop Deduction(s) and Return of Monies from Inmate's Account (Petition) in this Court's original jurisdiction on September 27, 2013. Therein, Morgalo requests

---

[1] This case was assigned to the opinion writer on or before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

[2] This case was assigned to the opinion writer on or before January 31, 2016, when Judge Leadbetter assumed the status of senior judge.

[3] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

this Court to direct the Pennsylvania Department of Corrections (Department) Inmate Accounting Office/Inmate Accountant Sandra Gorniak (Gorniak) to stop deducting monies from his inmate account and to order the Inmate Accounting Office and the Montgomery County Clerk of Courts to return funds previously deducted therefrom because his sentencing orders do not authorize deductions until he is paroled. In response, the Department filed preliminary objections to dismiss Morgalo's Petition pursuant to Pennsylvania Rule of Civil Procedure Number 1028(a)(4) on the grounds that it (1) is time-barred, and (2) fails to state a claim upon which relief may be granted.[4] The Department's preliminary objections are currently before the Court.

This Court's review of preliminary objections is limited to the pleadings. *Pa. State Lodge, Fraternal Order of Police v. Dep't of Conservation & Natural Res.*, 909 A.2d 413 (Pa. Cmwlth. 2006), *aff'd*, 924 A.2d 1203 (Pa. 2007).

> [This Court is] required to accept as true the well-pled averments set forth in the . . . complaint, and all inferences reasonably deducible therefrom. Moreover, the [C]ourt need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and, where any doubt exists as to whether the preliminary objections should be sustained, the doubt must be resolved in favor of overruling the preliminary objections.

*Id.* at 415-16 (citations omitted).

---

[4] Originally, the Department's preliminary objections also sought to dismiss Morgalo's Petition under Pennsylvania Rule of Appellate Procedure 1514(c) for lack of personal jurisdiction/improper service. On December 4, 2013, this Court ordered Morgalo to make proper service. By December 30, 2013 order, this Court overruled that preliminary objection based upon Morgalo's compliance with its December 4, 2013 order.

According to Morgalo's Petition, and his Memorandum of Law and exhibits incorporated therein, Morgalo is incarcerated in the State Correctional Institution at Albion (SCI-Albion), Pennsylvania. On June 23, 2003, the Montgomery County Common Pleas Court (trial court) sentenced Morgalo to 6 to 23 months' incarceration, followed by a consecutive two years of probation (Docket No. 7235 of 2002). The sentencing order stated: "[Morgalo] is sentenced to pay the costs of prosecution, and a fine of $500.00 and restitution of $_____ to ____ within the first _17_ months of supervision/release from custody in monthly installments as directed." Morgalo Pet. Ex. A.

On April 26, 2004, the trial court sentenced Morgalo to 6 to 23 months' incarceration, to be served concurrently with his Docket No. 7235 of 2002 sentence, followed by a consecutive two years of probation (Docket No. 1849 of 2002). The sentencing order stated, in pertinent part: "[Morgalo] is sentenced to pay the costs of prosecution, and a fine of $ -0- and restitution of $ 0 to 0 within the first _parole_ months of supervision/release from custody in monthly installments as directed." Morgalo Pet. Ex. B.

On September 13, 2004, the trial court sentenced Morgalo to 9 to 23 months' incarceration, followed by one year of consecutive probation (Docket No. 3911 of 2004). The sentencing order stated, in relevant part: "[Morgalo] is sentenced to pay the costs of prosecution, and a fine of $ -0- and restitution of $4,744.61 to SEE ATTACHED within the first ___ months of supervision/release from custody in monthly installments as directed. RESTITUTION JOINT/SEVERAL W/CO DEFT." Morgalo Pet. Ex. C.

On July 10, 2008, the trial court sentenced Morgalo to 16 to 32 years' incarceration (Docket No. 139 of 2007). The sentencing order stated: "[Morgalo]

is sentenced to pay the costs of prosecution, and a fine of $ _-_ and restitution of $ _-_ to _-_ within the first _____ months of supervision/release from custody in monthly installments as directed." Morgalo Pet. Ex. E.

Also on July 10, 2008, the trial court sentenced Morgalo to 5 to 10 years' incarceration (Docket No. 9197 of 2006) to be served concurrently with his Docket No. 139 of 2007 sentence. The sentencing order stated: "[Morgalo] is sentenced to pay the costs of prosecution, and a fine of $ _-_ and restitution of $ _-_ to _-_ within the first _____ months of supervision/release from custody in monthly installments as directed." Morgalo Pet. Ex. D.

On September 5, 2008, the Department began making monthly deductions from Morgalo's inmate account to satisfy his court costs and restitution obligation pursuant to Section 9728(b) of the Sentencing Code, 42 Pa.C.S. § 9728(b), commonly known as Act 84.[5] Act 84 provides in pertinent part:

> (3) The county clerk of courts shall, upon sentencing, . . . transmit to . . . the [Department] . . . copies of all orders for restitution . . . , reparation, fees, costs, fines and penalties. This paragraph also applies in the case of costs imposed under [S]ection 9721(c.1) [of the Sentencing Code] (relating to sentencing generally).[6]

---

[5] 42 Pa.C.S. §§ 9701-9799.41. The Sentencing Code was amended by Section 4 of the Act of June 18, 1998, P.L. 640.

[6] Section 9721(c.1) of the Sentencing Code states:

> **Mandatory payment of costs.**--Notwithstanding the provisions of [S]ection 9728 [of the Sentencing Code] (relating to collection of restitution, reparation, fees, costs, fines and penalties) or any provision of law to the contrary, in addition to the alternatives set forth in subsection (a), the court shall order the defendant to pay costs. In the event the court fails to issue an order for costs pursuant to [S]ection 9728 [of the Sentencing Code], costs shall be imposed upon the defendant under this section. No court order

4

. . . .

> (5) **The . . . [Department] shall be authorized to make monetary deductions from inmate personal accounts for** the purpose of collecting restitution or any other court-ordered obligation or **costs imposed under [S]ection 9721(c.1) [of the Sentencing Code]**. Any amount deducted shall be transmitted by the [Department] . . . to the probation department of the county or other agent designated by the county . . . in which the offender was convicted. **The [Department] shall develop guidelines relating to its responsibilities under this paragraph**.

42 Pa.C.S. § 9728(b) (emphasis added). Section 3.A of Department DC-ADM 005 (Collection of Inmate Debts Procedures Manual) (Debt Collection Manual) provides:

> **Collection of Restitution, Reparation, Fees, Costs, Fines and Penalties 42 Pa. C.S. § 9728, Act 84 of 1998 (Act 84)**
>
> 1. When the County Clerk of Courts provides a copy(s) of an order(s) for restitution, reparation, fees, costs, fines, and/or penalties associated with the criminal proceedings, the records office shall file the original and shall forward a copy of the order to the business office of the facility having custody of the inmate. The court order, the **DC-300B, Court Commitment Form**, or supporting information, must indicate the status of the debt including the current balance due and any special conditions, which would [a]ffect payments.
>
> 2. The business office, through inmate account deductions, makes:

---

shall be necessary for the defendant to incur liability for costs under this section. The provisions of this subsection do not alter the court's discretion under Pa.R.Crim.P. No. [sic] 706(C) (relating to fines or costs).

42 Pa.C.S. § 9721(c.1).

a. payments of 20% of the inmate's account balance and monthly income for restitution, reparation, fees, costs, fines, and/or penalties associated with the criminal proceedings pursuant to **42 Pa.C.S. § 9728, Act 84 of 1998**, provided that the inmate has a balance that exceeds $10.00; and

b. payments of 10% of all the inmate's account balance and monthly income, for the Crime Victim's Compensation and Victim/Witness Services Funds, provided that the inmate has a balance that exceeds $10.00.

3. The business office shall send the funds deducted to the county probation department or other designated agency.

. . . .

5. Court orders that require payment upon, or within a certain amount of time after parole or release, may not be collected as set forth in this section unless the sentencing court stipulates, via court order, that the Department is to begin collection prior to the inmate being paroled or released. In the event that a court order states payment is required on or after parole or release, the Facility Records Office Supervisor/designee shall contact the court and request clarification of the court order using the **Court Order Clarification Memo (Attachment 3-A)**.

Morgalo Pet. Ex. F (bolded in original).

Morgalo initially sought relief from the deductions and for return of monies from his inmate account through the Department's inmate grievance system.[7] On March 22, 2010, he filed Grievance No. 311819 regarding the allegedly improper Act 84 deductions, but claims he was unable to complete that process due to a transfer to an out-of-state prison. On May 28, 2013, Morgalo filed inmate Grievance No. 461892 with the Facility Grievance Coordinator alleging the

---

[7] DC-ADM 804 (Inmate Grievance System).

unlawful deductions of monies from his prison inmate account stating, "I submitted previous paperwork to no avail." Morgalo Pet. Ex. H. That grievance was denied as having been addressed in 2010. Morgalo Pet. Ex. I. Thus, Morgalo contends that he exhausted his administrative remedies and now seeks an order from this Court declaring that the Department was not authorized to make deductions from his inmate account, ordering reimbursement of the funds deducted to date, and enjoining further deductions.

### Department's First Preliminary Objection - Timeliness

The Department objects to Morgalo's Petition on the ground that Morgalo's claims are time-barred. Initially, the Department contends that since Morgalo's requested relief is a mandamus action, the statute of limitations is six months.

We acknowledge that this Court has historically applied a six-month limitations period to inmate account deduction claims. *See Curley v. Smeal*, 41 A.3d 916 (Pa. Cmwlth. 2012) (*Curley I*), *aff'd but criticized*, 82 A.3d 418 (Pa. 2013) (*Curley II*); *see also Lepre v. Susquehanna Cnty. Clerk of Judicial Records* (Pa. Cmwlth. No. 2121 C.D. 2012, filed October 2, 2013); *Richards v. Dep't of Corr.* (Pa. Cmwlth. No. 546 M.D. 2010, filed October 11, 2013); *Lusick v. Defacto Judge Pam Pryor Cohen Dembe* (Pa. Cmwlth. No. 549 M.D. 2012, filed November 7, 2012), *aff'd*, 84 A.3d 1056 (Pa. 2014); *Pierre-Louis v. Dep't of Corr.* (Pa. Cmwlth. No. 48 M.D. 2010, filed August 14, 2012); *Stockton v. Dougherty* (Pa. Cmwlth. No. 31 M.D. 2011, filed July 10, 2012), *aff'd*, 88 A.3d 968 (Pa. 2014); *Zellie v. Dep't of Corr.* (Pa. Cmwlth. No. 97 M.D. 2011, filed March 1, 2012).

7

Based on *stare decisis*, this Court applied the six-month limitations period in *Curley I*. In *Curley II*, the Pennsylvania Supreme Court, in a per curiam opinion, affirmed *Curley I* on the basis that the inmate's claim was time-barred, however, added: "[T]his Court does not embrace the Commonwealth Court's view that this action sounds in mandamus or that a six-month statute of limitations applies to actions in mandamus in this context." *Curley II*, 82 A.3d at 418. Chief Justice Castille filed a concurring statement (joined by Justice Eakin) in which he articulated that the Court should have gone farther and "correct[ed] the mistakes below." *Id.* In regard to the statute of limitations, the Chief Justice found it difficult to see how a properly-asserted mandamus action "would lend itself to a period of limitations analysis; since a mandamus action alleges a failure to act, there is no action to trigger a specific limitations period." *Id.* at 419. "[N]otwithstanding [his] disapproval of the Commonwealth Court's published holdings on these two points of law," since the inmate's claim was also "time-barred under the two-year period of limitation [the inmate] himself claim[ed] [was] controlling[,]" the Chief Justice concurred in affirming this Court's holding that the inmate's claim was time-barred. *Id.* For the following reasons, we overrule our holding in *Curley I* and declare that inmate account deduction actions are not mandamus actions, nor are they subject to a six-month limitations period.

First, relative to the instant case, Morgalo's petition does not expressly reference mandamus, and mandamus cannot be imputed from his allegations. The Pennsylvania Supreme Court has held:

> 'Mandamus is an extraordinary writ that will only lie to compel official performance of a ministerial act or mandatory duty **where there is a clear legal right in the plaintiff, a corresponding duty in the defendant**, and want of any other appropriate or adequate remedy.'

8

> *Jackson v. Vaughn, . . .* 777 A.2d 436, 438 ([Pa.] 2001) (citation omitted). It may be used to compel performance of a ministerial duty, or to compel action in a matter involving judgment or discretion. **However, it may not be used** to direct the exercise of judgment or discretion in a particular way, or **to direct the retraction or reversal of an action already taken**. 'Mandamus is a device that is available in our system to compel a tribunal or administrative agency to act when that tribunal or agency has been 'sitting on its hands.' ' [*Pa. Dental Ass'n v. Commonwealth Ins. Dep't, . . .* 516 A.2d 647, 652 ([Pa.] 1986).]

*Chanceford Aviation Props., L.L.P. v. Chanceford Twp. Bd. of Supervisors*, 923 A.2d 1099, 1107-08 (Pa. 2007) (citations omitted; emphasis added).

Morgalo's Petition seeks to have this Court issue an order requiring the Department to **stop the deductions** and **return the money** because its actions are in contravention of the trial court's orders directing him to pay the fines, costs and restitution <u>after</u> he is released from custody. *See* Morgalo Pet. at 2; *see also* Morgalo Memorandum of Law at 5-8; Morgalo Resp. to Prelim. Obj. at 11-15. Because it is not clear on the face of the Petition that Morgalo's payments are indeed due only after his release, there is no clear legal right in him or corresponding duty in the Department. Moreover, mandamus may not be used to reverse actions the Department has already taken; thus, it cannot be the basis upon which this Court may order the Department to stop the deductions and return previously-deducted funds. *See Chanceford Aviation Props.* Accordingly, Morgalo's claim is not a mandamus action.

Second, a six-month limitations period does not apply in this case. Section 5522(b)(1) of the Judicial Code requires that any "action against any officer of any government unit for anything done in the execution of his office, **except an action subject to another limitation specified in this subchapter**"

9

must be commenced within six months. 42 Pa.C.S. § 5522(b)(1) (emphasis added). In Section 5524 of the Judicial Code, the General Assembly established a two-year limitations period for certain claims. Of the eight types of actions listed, only Sections 5524(3) and 5524(6) of the Judicial Code are potentially applicable to the instant matter.[8]

---

[8] Section 5524 of the Judicial Code states:

> The following actions and proceedings must be commenced within two years:
>
> (1) An action for assault, battery, false imprisonment, false arrest, malicious prosecution or malicious abuse of process.
>
> (2) An action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another.
>
> (3) An action for taking, detaining or injuring personal property, including actions for specific recovery thereof.
>
> (4) An action for waste or trespass of real property.
>
> (5) An action upon a statute for a civil penalty or forfeiture.
>
> (6) An action against any officer of any government unit for the nonpayment of money or the nondelivery of property collected upon on execution or otherwise in his possession.
>
> (7) Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter.
>
> (8) An action to recover damages for injury to a person or for the death of a person caused by exposure to asbestos shall be commenced within two years from the date on which the person is informed by a licensed physician that the person has been injured

10

Section 5524(3) of the Judicial Code imposes a two-year statute of limitations for "[a]n action for taking, detaining or injuring personal property, including actions for specific recovery thereof." 42 Pa.C.S. § 5524(3). However, in *Commonwealth v. Allen*, 59 A.3d 677 (Pa. Cmwlth. 2012), *aff'd but criticized*,[9] 107 A.3d 709 (Pa. 2014), this Court declined to apply Section 5524(3) of the Judicial Code to a motion for return of property and held:

> [A]ll of the reported cases applying Section 5524(3) are **tort actions commenced by complaint**. *See, e.g., Kingston Coal Co. v. Felton Mining Co., Inc., . . .* 690 A.2d 284 ([Pa. Super.] 1997) (conversion arising from unlawful removal of minerals); *Am*[.] *Ins*[.] *Co. v. Ford Motor Credit Co., . . .* 648 A.2d 576 ([Pa. Super.] 1994) (surety of tax collector brought suit to recover amounts paid to third party out of public funds); *Torchia v. Keystone Foods Corp., . . .* 635 A.2d 1082 ([Pa. Super.] 1993) (tortious interference with contract rights); *Bender v. McIlhatten, . . .* 520 A.2d 37 ([Pa. Super.] 1987) (tortious interference with lease negotiations). **None of these tort claims can be filed against the Commonwealth** or a municipal police department **because they do not fall within the category of torts that can be filed against the Commonwealth** or a local government.

*Id.* at 680-81 (emphasis added). This Court explained:

---

by such exposure or upon the date on which the person knew or in the exercise of reasonable diligence should have known that the person had an injury which was caused by such exposure, whichever date occurs first.

42 Pa.C.S. § 5524.

[9] In its review of this Court's *Allen* decision, the Pennsylvania Supreme Court "reject[ed] the Commonwealth Court's reliance on a statute of limitations analysis to resolve the timeliness of [the a]ppellee's return motion[.]" *Allen*, 107 A.3d at 718. However, this Court's analysis of Section 5524(3) of the Judicial Code's applicability to government defendants was not criticized.

11

> Even if a cause of action has been made out against the defendants, the complaint will still fail to state a claim if the defendants are entitled to sovereign immunity. The test to determine if a Commonwealth employee is protected from liability is to consider 'whether the Commonwealth employee was acting within the scope of his or her employment; **whether the alleged act which causes injury was negligent** and damages would be recoverable but for the availability of the immunity defense; **and whether the act fits within one of the nine exceptions to sovereign immunity**.'

*Williams v. Syed*, 782 A.2d 1090, 1095 (Pa. Cmwlth. 2001) (emphasis added) (quoting *La Frankie v. Miklich*, 618 A.2d 1145, 1149 (Pa. Cmwlth. 1992)). In Section 8522(b) of what is commonly known as the Sovereign Immunity Act,[10] the General Assembly waived sovereign immunity for damages caused in nine specific instances, none of which apply to this case.[11] 42 Pa.C.S. § 8522(b). Accordingly, Section 5524(3) of the Judicial Code's two-year limitations period does not supersede Section 5522(b)(1) of the Judicial Code's six-month time limit.

---

[10] 42 Pa.C.S. §§ 8521-8528.

[11] A Commonwealth party may be liable under Section 8522(b) of the Sovereign Immunity Act for damages due to: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 Pa.C.S. § 8522(b).

Although the Commonwealth may be liable to an inmate for **damage to or negligent handling of** personal property under its care, custody or control, *Williams v. Stickman*, 917 A.2d 915 (Pa. Cmwlth. 2007), this Court has held that the **taking of** the property is not conduct that falls with that exception. *See Goodley v. Folino* (Pa. Cmwlth. No. 2376 C.D. 2010, filed July 22, 2011). Moreover, rather than negligence, Morgalo's claim is that Gorniak and the Montgomery County Clerk of Courts intentionally and deliberately took his money and failed to return it. "[S]tate employees do not lose their immunity for intentional torts, provided they are acting within the scope of their employment." *Kull v. Guisse*, 81 A.3d 148, 157 (Pa. Cmwlth. 2013).

12

Section 5524(6) of the Judicial Code, on the other hand, provides that **"[a]n action against any officer of any government unit for** the nonpayment of money or **the nondelivery of property** collected upon on execution or **otherwise in his possession" must be commenced within two years**. 42 Pa.C.S. § 5524(6) (emphasis added).

We analyze the first requirement of Section 5524(6) of the Judicial Code - **"[a]n action against any officer of any government unit"** - under the Judicial Code definitions. 42 Pa.C.S. § 5524(6). Section 102 of the Judicial Code defines "[g]overnment unit" to include "any government agency or any court or other officer or agency of the unified judicial system." 42 Pa.C.S. § 102. "Government agency" is defined as "[a]ny Commonwealth agency . . . ." *Id.* The Judicial Code defines "Commonwealth agency" as "[a]ny executive agency or independent agency." *Id.* Executive agencies consist of "the departments, boards, commissions, authorities and other officers and agencies of the Commonwealth government[.]" *Id.* "Commonwealth government" is defined as "[t]he government of the Commonwealth, including the courts and other officers or agencies of the unified judicial system, . . . and the departments, boards, commissions, authorities and officers and agencies of the Commonwealth[.]" *Id.*

Article 5, Section 1 of the Pennsylvania Constitution vests the Commonwealth's judicial power "in a unified judicial system consisting of the . . . courts of common pleas . . . ." Pa. Const. art. 5, § 1. The clerk of courts is "[t]he officer exercising the powers and performing the duties specified in Subchapter C of Chapter 27 (relating to clerks of the court)" for any of the Commonwealth's judicial districts. 42 Pa.C.S. § 102; *see also* 42 Pa.C.S. § 901.

13

This Court has determined that an officer of the unified judicial system and a judicial officer are two separate entities. *See Dep't of Health v. Hanes*, 78 A.3d 676, 685 (Pa. Cmwlth. 2013). Section 102 of the Judicial Code defines "[c]ounty staff" as "[s]ystem and related personnel . . . other than judicial officers [which are designated therein as '[j]udges, magisterial district judges and appointive judicial officers'] . . . ." 42 Pa.C.S. § 102. The Judicial Code specifically defines "[s]ystem and related personnel" to include clerks of courts. *Id.* Although the clerk of courts is considered county staff as opposed to a judicial officer, he is nevertheless an officer of a Commonwealth government. *See Hanes*, 78 A.3d at 685 (holding that "[a]lthough Hanes is not a 'judicial officer,' he is named in his official capacity as Clerk of the Orphans' Court of Montgomery County. He is, therefore, an officer of the Commonwealth government under Section 102 of the Judicial Code. . . ."); *see also Richardson v. Peters*, 19 A.3d 1047 (Pa. 2011) (holding that the Commonwealth Court erred by concluding that the common pleas clerk of courts was not a Commonwealth officer); *Appeal of Troutman*, 936 A.2d 1, 7 (Pa. 2007) (holding that a common pleas clerk of courts "is considered to be the Commonwealth government as a Commonwealth officer"). Therefore, the Montgomery County Clerk of Courts is an officer of the Commonwealth government.

Because Section 102 of the Judicial Code does not specifically define "officer," and we found no case law on point, we must analyze whether Morgalo's action against Gorniak, as the Department's SCI-Albion accountant, qualifies as an action against a Commonwealth officer. Morgalo's Petition names Gorniak as a party to his action, but more specifically therein states that "the Inmate Accounting Office at SCI-Albion began deducting . . . from [his] account and sending same to

14

the Clerk of Court's Office of Montgomery County." Morgalo Pet. ¶ 1. He further seeks this Court's intervention "in correcting the Inmate Accounting Office[']s . . . error and misinterpretation[.]" Morgalo Pet. ¶ 4. Because Morgalo's claims are for Gorniak's actions within the scope of her employment on the Department's behalf, and the Department is defending its deductions, it is clear that the Department is the Commonwealth party from whom Morgalo is seeking relief.

Section 8501 of the Judicial Code (relating to matters affecting government units) defines "Commonwealth party" as "[a] Commonwealth agency and any employee thereof . . . with respect to an act within the scope of his office or employment." 42 Pa.C.S. § 8501. There is no question that the Department is a Commonwealth agency. *See* 42 Pa.C.S. § 102; *see also McCray v. Pa. Dep't of Corr.*, 872 A.2d 1127 (Pa. 2005). "Employee" is defined, in pertinent part, as: "Any person who is acting . . . on behalf of a government unit whether on a permanent or temporary basis, whether compensated or not and whether within or without the territorial boundaries of the government unit, including . . . any elected or appointed officer, member of a governing body or other person designated to act for the government unit." 42 Pa.C.S. § 102. Accordingly, we hold that Morgalo's claims against Gorniak meet the requirement that the claim be "against any officer of any government unit[.]" 42 Pa.C.S. § 5524(6).

The General Assembly did not specifically define the terms of the second requirement of Section 5524(6) of the Judicial Code – "**for the . . . nondelivery of property . . . in [the government unit officer's] possession[.]**" 42 Pa.C.S. § 5524(6).

> The Statutory Construction Act [of 1972, 1 Pa.C.S. §§ 1501-1991] provides that in interpreting a statute it is incumbent that the reviewing court endeavor to ascertain the intent of the Legislature and that when the words of a

15

> statute are clear and free of ambiguity we must interpret those words by their plain meaning.

*Commonwealth v. Cox*, 983 A.2d 666, 703 (Pa. 2009); *see also People United to Save Homes v. Dep't of Envtl. Prot.*, 789 A.2d 319, 328 (Pa. Cmwlth. 2001) ("if a statutory provision is not ambiguous, the legislative intent should be effectuated by according the words their plain and ordinary meaning").  Because the General Assembly did not define the terms of Section 5524(6) of the Judicial Code therein, this Court may determine their "common and approved usage . . . by examining [their] dictionary definition[s]."  *Commonwealth v. Hart*, 28 A.3d 898, 909 (Pa. 2011).

"Nondelivery" is the "failure to transfer or convey something." *Black's Law Dictionary* 1152 (9th ed. 2009).  "Personal property" is "[a]ny movable or intangible thing that is subject to ownership and not classified as real property." *Id.* at 1337.  "Possession" is defined as "[t]he fact of having or holding property in one's power; the exercise of dominion over property." *Id.* at 1281. Here, because the Department made the monetary deductions and transferred the money to the Montgomery County Clerk, where it remains despite Morgalo's demands, the "nondelivery of property . . . in [the government unit officer's] possession" requirement of Section 5524(6) of the Judicial Code is met.  42 Pa.C.S. § 5524(6).

In *Stoppie v. Johns*, 720 A.2d 808 (Pa. Cmwlth. 1998), this Court reasoned that if Section 5524(6) of the Judicial Code designates a statute of limitations for the specific conduct at issue, it prevails over the six-month limitations period in Section 5522(b)(1) of the Judicial Code which applies when the specific stated activity does not have an otherwise designated limitations

16

period.[12]  Because Section 5524(6) of the Judicial Code applies specifically to a government unit officer's non-delivery of property over which it has exercised dominion, Section 5524(6) of the Judicial Code's two-year limitations period applies over Section 5522(b)(1) of the Judicial Code's six-month time limit.  Thus, Morgalo's action for return of his inmate account monies against Gorniak and the Montgomery County Clerk of Courts is subject to a two-year statute of limitations.[13]

In the instant case, Morgalo specifically pled that the Department began making the deductions from his account on September 5, 2008.  Applying the two-year statute of limitations, Morgalo's action had to be filed with this Court on or before September 5, 2010 in order to be timely.[14]  Because Morgalo did not

---

[12] We acknowledge that the *Stoppie* Court's holding applied to Section 5524(7) of the Judicial Code, 42 Pa.C.S. § 5524(7), rather than Section 5524(6) of the Judicial Code.  However, in reaching its decision, the Court discussed both provisions.  Thus, the Court's reasoning is applicable and instructive in the instant case.

[13] As the Department argued, even if Morgalo's claim could be deemed a civil rights action, a two-year statute of limitations period would apply.

> With respect to claims pursuant to 42 U.S.C. § 1983, the [United States] Supreme Court has concluded that such claims are best characterized as personal injury actions for purposes of state statutes of limitations. *Wilson v. Garcia,* 471 U.S. 261 . . . (1985). As such, claims which are brought pursuant to 42 U.S.C. § 1983 are also subject to a two-year statute of limitations in Pennsylvania. *See* 42 Pa.C.S. § 5524[(7)].

*Burger v. Borough of Ingram*, 697 A.2d 1037, 1041 (Pa. Cmwlth. 1997).

[14] In Morgalo's brief, he clarified that although the deductions began on September 5, 2008, he was not aware of them at that time.  Notwithstanding, Pennsylvania courts have declined to treat these types of deductions as continuing violations that would reset the statute of limitations.  The Pennsylvania Supreme Court has held:

> [A] statute of limitations period begins to run when a cause of action accrues; *i.e.,* when an injury is inflicted and the

17

file his Petition with this Court until September 27, 2013, his appeal exceeded the applicable statute of limitations by three years.

However, Morgalo claims that he was required to exhaust his administrative remedies before seeking an order from this Court declaring that the Department was not authorized to make deductions from his inmate account.

> The doctrine of exhaustion of administrative remedies requires that a person challenging an administrative decision must first exhaust all adequate and available administrative remedies before seeking relief from the courts. The purposes of this exhaustion requirement are to prevent premature judicial intervention in the administrative process and ensure that claims will be addressed by the body with expertise in the area. Thus, where the legislature has provided an administrative procedure to challenge and obtain relief from an agency's action, failure to exhaust that remedy bars this Court

---

> corresponding right to institute a suit for damages arises. It is the duty of the party asserting a cause of action to use all reasonable diligence to properly inform him-or herself of the facts and circumstances upon which the right of recovery is based and to institute suit within the prescribed period. Generally, once the prescribed statutory period has expired, the complaining party is barred from bringing suit.

*Gleason v. Borough of Moosic*, 15 A.3d 479, 484 (Pa. 2011) (citations omitted).

This Court has expressly held that under circumstances in which the inmate is aware of the ongoing deductions, his/her cause of action accrues when the Department makes the first deduction. This Court in *Zellie* noted that it had previously "rejected the argument that a continuing violation creates ongoing causes of action, stating: . . . '[a]dopting [such a] rationale would effectively render the limitation period for any cause of action alleging loss of payment meaningless when the payment is received on a regular basis.'" Slip op. at 3 n.5 (quoting *Casner v. Am. Fed'n of State, Cnty., & Mun. Emps.*, 658 A.2d 865, 871 (Pa. Cmwlth. 1995)). Two weeks after the *Zellie* decision, the *Curley I* Court likewise relied upon *Casner* to conclude that a cause of action commences in these types of cases when the Department makes the first deduction. Four weeks after *Curley I* was decided, the *Pierre-Louis* Court relied upon *Curley I* and *Casner* to reach the same conclusion.

18

from hearing claims for declaratory or injunctive relief with respect to that agency action.

*Funk v. Dep't of Envtl. Prot.*, 71 A.3d 1097, 1101 (Pa. Cmwlth. 2013) (citations omitted). The Department has a procedure for inmates to challenge its decisions.

> Chapter 93 of Title 37 of the Pennsylvania Code contains regulations pertinent to state correctional institutions. Section 93.9 [of the Department's regulations] establishes an inmate grievance system that provides a forum for prison inmates to complain to the Department about problems that arise 'during the course of confinement.' 37 Pa.[ ]Code § 93.9. That section states:
>
> > (a) The Department will maintain an inmate grievance system which will permit any inmate to seek review of problems which the inmate experiences during the course of confinement. The system will provide for review and resolution of inmate grievances at the most decentralized level possible. It will also provide for review of the initial decision[-]making and for possible appeal to the Central Office of the Department. An inmate will not be disciplined for the good faith use of the grievance systems. . . .
>
> *Id.*

*McCray v. Dep't of Corr.*, 872 A.2d 1127, 1131 (Pa. 2005).

According to the Commonwealth's Inmate Grievance System Procedures Manual (Grievance Manual) and the Department's Inmate Handbook (Handbook), the inmate grievance process begins with the filing of a grievance with the Facility Grievance Coordinator. Grievance Manual at 1-2; Inmate Handbook at 8. "The [process] requires an inmate who has received an initial determination on his grievance to appeal to the Superintendent and, thereafter, seek final review with [the Department]. If the inmate fails to complete each of these

19

steps, he fails to exhaust his administrative remedies." *Kittrell v. Watson*, 88 A.3d 1091, 1095 (Pa. Cmwlth. 2014).

Morgalo avers in his Petition that, on March 22, 2010, he filed Grievance No. 311819 concerning the allegedly improper Act 84 deductions. However, he declared that he "did not get the chance to complete th[at] process." Morgalo Pet. Ex. J. The Department's records, which Morgalo attached to his Petition, reflect that Grievance No. 311819 "was answered on 4/5/10" by the Facility Manager. Morgalo Pet. Ex. K. However, the Facility Manager's April 5, 2010 response was not attached to Morgalo's Petition.

Also according to Morgalo's allegations set forth in his Petition, he filed inmate Grievance No. 461892 with the Facility Grievance Coordinator on May 28, 2013 regarding the deductions, stating: "I submitted previous paperwork to no avail." Morgalo Pet. Ex. H. On June 10, 2013, the Facility Grievance Coordinator rejected the grievance because "the issue(s) presented . . . has been reviewed and addressed." Morgalo Pet. Ex. I. Morgalo appealed from that decision to the Facility Manager, arguing that he was not afforded the opportunity to complete the former grievance. Morgalo Pet. Ex. J. On July 11, 2013, the Facility Manager rejected Morgalo's appeal because it was addressed in 2010 relative to Grievance No. 311819. Morgalo Pet. Ex. K. Morgalo appealed therefrom to the Chief Grievance Officer who, on August 30, 2013, responded:

> A review of the record was conducted by the Office of Chief Counsel. They found that this matter was dealt with appropriately in 2010 when you filed [G]rievance #311819. The [Department] policy DC-ADM 804 does not permit either duplicative grievances or untimely grievances. You provide no evidence to substantiate your objection to the collection of Act 84 funds from your Inmate Account. This office upholds the decisions of the Office of Chief Counsel, the Facility Manager and

20

the Grievance Officer in denying your grievance and requested relief.

Morgalo Pet. Ex. M.

In his Petition, Morgalo claims that when he was removed to the Michigan department of corrections "in 2010," he understood that he was in Michigan's custody and "was not authorized to conform to the doctrine of exhaustion of remedies, and therefore was unable to petition the [C]ourt in 2010." Morgalo Pet. at 8. Morgalo does not specify in either the Petition or his brief when he was taken into Michigan's custody. Notwithstanding, on or about May 28, 2013 (presumably upon his return from Michigan), Morgalo again filed a grievance regarding the deductions. Morgalo contends that his May 2013 grievance was a continuation of the March 2010 grievance because he was prevented from exhausting the grievance process he started in March 2010. *See* Morgalo Pet. Ex. H.

If Morgalo's March 2010 grievance was exhausted as of April 5, 2010, his September 27, 2013 filing exceeded the two-year statute of limitations, making his claim untimely. If, however, Morgalo's May 2013 grievance was a continuation of the March 2010 grievance, and his administrative remedies were exhausted August 30, 2013, his September 27, 2013 filing was timely. Based upon the Petition, we cannot ascertain whether Morgalo's May 2013 grievance was a new grievance or an extension of his March 2010 grievance and, thus, we cannot determine whether the Petition was timely filed.

Because "it must appear with certainty that the law will not permit recovery, and, where any doubt exists as to whether the preliminary objections should be sustained, the doubt must be resolved in favor of overruling the preliminary objections[,]" we are constrained to overrule the Department's

21

preliminary objection as to the timeliness of Morgalo's Petition. *Pa. State Lodge, Fraternal Order of Police*, 909 A.2d at 416. Therefore, the Department's objection to the Petition's timeliness is overruled.

### Department's Second Preliminary Objection - Demurrer

The Department also objects to Morgalo's Petition on the ground that Morgalo has failed to state a claim upon which relief may be granted. In the Petition, Morgalo pleads that the Department's Inmate Accounting Office and Clerk of Courts deducted monies from his inmate account without proper judicial authorization. The Department specifically argues that since it is statutorily authorized to collect monies from inmate accounts without the trial court's orders, the wording therein is irrelevant; however, to the extent the trial court's orders control, they are unambiguous.

Morgalo contends that the Department's Inmate Accounting Office and Clerk of Courts erred and misinterpreted Sections 8127(a) of the Judicial Code (relating to when wages may be attached)[15] and Section 9728 of the Sentencing Code (relating to restitution collection) and, as a result, "[t]o date, a total of $690.65 has been deducted from [his] account without any authorization from the law and in direct contravention of Petitioner's Sentencing Judge['s] Orders and [Department] Policy." Morgalo Pet. ¶ 2. Specifically, citing *Commonwealth v. Fleming*, 804 A.2d 669 (Pa. Super. 2002); *Boofer v. Lotz*, 797 A.2d 1047 (Pa. Cmwlth. 2002), *rev'd*, 842 A.2d 333 (Pa. 2004); and *Holloway v. Lehman*, 671 A.2d 1179 (Pa. Cmwlth. 1996), Morgalo claims that the Department cannot take his money without notice and the opportunity to be heard.

---

[15] 42 Pa.C.S. § 8127(a).

22

In *George v. Beard*, 824 A.2d 393 (Pa. Cmwlth.), *aff'd*, 831 A.2d 597 (Pa. 2003), and *Russell v. Donnelly*, 827 A.2d 535 (Pa. Cmwlth. 2003), this Court sustained demurrers based on nearly identical arguments. In *George*, this Court stated:

> [Section 9728(b)(5) of the Sentencing Code] authorizes [the Department] to make monetary deductions from an inmate's account to pay court[-]ordered fines and costs and does not impose prior court authorization as a threshold condition. *See* [*Fleming*]; *Sweeney v. Lotz,* 787 A.2d 449 (Pa. Cmwlth. 2001). As noted, [the inmate] concedes that fines and costs were imposed as part of his criminal sentence. Petition, ¶ 5. It is the judgment of sentence which enables [the Department] to deduct the funds. Thus, [the inmate] may not challenge that judgment by seeking to enjoin [the Department] from carrying out its statutorily[-]mandated duty to deduct the funds. *Harding v. Superintendent Stickman of SCI Greene,* 823 A.2d 1110 . . . (Pa. Cmwlth. . . . 2003) (inmate may not challenge substance of sentencing court's order by seeking an injunction against [the Department]). *Compare Commonwealth v. Baker,* 782 A.2d 584 (Pa. Super. 2001) (inmate appealed trial court's order directing deductions from inmate's account for costs and restitution).
>
> . . . .
>
> Nor is [the inmate] entitled to reimbursement from [the Department] for funds deducted from his account. Pursuant to Section 9728(b)(5) of the Sentencing Code, the funds deducted from his inmate account were sent to the appropriate county agent for payment of his court ordered obligations. As such, he has no right to reimbursement from [the Department]. *Harding.*

*George*, 824 A.2d at 396-97. Thereafter, in *Russell*, this Court held:

> The [*Harding*] Court found that the holding in *Boofer* does not negate [the Department's] authority under Act 84 to make the deductions. In *Boofer*[,] the Court held

23

that a hearing was required before deductions could be made from an inmate's account to determine his financial ability to pay. The Court relied upon Section 8127(a) of the Judicial Code, 42 Pa.C.S. § 8127(a), which provides that an individual's wages are exempt from attachment while in the hands of an employer but that wages may be attached upon an action for restitution and costs.[FN]3 The Court cited *Holloway . . .*, which held that inmates could challenge the deductions from their accounts where [the Department], in the complete absence of any due process, assessed monetary damages against inmates for destruction of prison property and began deducting funds from their accounts after the appeal period had expired from misconduct decisions finding them liable for damages.

> [FN]3. In *Mays v. Fulcomer, . . .* 552 A.2d 750 ([Pa. Cmwlth.] 1989), the Court held that inmate remuneration for prison labor does not constitute wages for purposes of Section 8127 [of the Judicial Code[16]].

Unlike the inmates in the *Holloway* case, [the inmate] was afforded due process when the restitution amount was established by the court of common pleas at his sentencing hearing.[17] Moreover, Section 9728(b)(5) [of the Sentencing Code] was amended after *Holloway*. In

---

[16] *See also Heffran v. Dep't of Labor & Indus.*, 863 A.2d 1260, 1263 (Pa. Cmwlth. 2004) *aff'd*, 886 A.2d 222 (Pa. 2005) (holding that an inmate was not an employee with standing to file a complaint for violations of the Worker and Community Right-to-Know Act, Act of October 5, 1984, P.L. 734, 35 P.S. §§ 7301-7320).

[17] We acknowledge that, six years after Morgalo's deductions commenced, the U.S. Court of Appeals for the Third Circuit determined in *Montañez v. Pennsylvania Department of Corrections*, 773 F.3d 472, 481 (3d Cir. 2014) that inmates must receive pre-deduction notification. However, the Pennsylvania Supreme Court has held: "While we certainly find [Third Circuit Appeals Court] decisions instructive, their holdings . . . are not binding on us or any other court of this Commonwealth." *Goldman v. Se. Pa. Transp. Auth.*, 57 A.3d 1154, 1170 n.12 (Pa. 2012). Moreover, the Pennsylvania Supreme Court has yet to adopt *Montañez*. Rather, in *Buck v. Beard*, 879 A.2d 157 (Pa. 2005), the Pennsylvania Supreme Court held that a "sentencing hearing provided [the inmate] with the required pre-deprivation due process[.]" *Id.* at 161. Accordingly, *Buck* is controlling.

> *Sweeney* the Court noted the holding in *Sweatt* [*v. Department of Corrections*, 769 A.2d 574 (Pa. Cmwlth. 2001)] that Section 9728(b)(5) [of the Sentencing Code] merely provided a procedural mechanism for collecting costs, fines and restitution from incarcerated judgment debtors and noted further the proposition that an individual is obligated to pay court-ordered restitution irrespective of his or her incarceration.

*Russell*, 827 A.2d at 537-38.  Based upon the foregoing, we similarly hold that Morgalo's reliance upon Section 8127(a) of the Judicial Code, *Fleming*, *Boofer* and *Holloway* to support his position is misplaced.

Morgalo further argues that "the Department neglected [the trial court's o]rders and ignored it[s] own policy when it never contacted [the sentencing judge] to obtain a 'Certified Order' authorizing [it] to deduct money from [Morgalo's] account."  Morgalo Pet. Memorandum at 7.  Indeed, Section 3.A.5 of the Department's Debt Collection Manual prohibits the Department from commencing Act 84 inmate account deductions if a trial court's sentencing order specifies that payments will be required "upon or within a certain amount of time after parole or release" and, if the Department is unsure whether a court order intends for payments to begin at or after parole, the Department "shall" contact the trial court and obtain clarification.  Morgalo Pet. Ex. F.

According to the documents incorporated into Morgalo's Petition, the June 23, 2003 sentencing order stated: **"[Morgalo] is sentenced to pay the costs of prosecution, and a fine of $500.00** and restitution of $_____ to ____ **within the first   17   months of supervision/release from custody** in monthly installments as directed."  Morgalo Pet. Ex. A (emphasis added).  The April 26, 2004 sentencing order read, in pertinent part: **"[Morgalo] is sentenced to pay the costs of prosecution**, and a fine of $ -0- and restitution of $ 0 to 0 **within the**

25

**first   parole months of supervision/release from custody** in monthly installments as directed." Morgalo Pet. Ex. B (emphasis added). The September 13, 2004 sentencing order reflected, in relevant part: **"[Morgalo] is sentenced to pay the costs of prosecution**, and a fine of $ -0- **and restitution of $4,744.61 to** SEE ATTACHED **within the first ___ months of supervision/release from custody** in monthly installments as directed. RESTITUTION JOINT/SEVERAL W/CO DEFT." Morgalo Pet. Ex. C (emphasis added). And the two July 10, 2008 sentencing orders identically stated: **"[Morgalo] is sentenced to pay the costs of prosecution,** and a fine of $ - and restitution of $ - to - **within the first ___ months of supervision/release from custody** in monthly installments as directed." Morgalo Pet. Exs. D and E (emphasis added).

The trial court's sentencing orders unartfully proscribe what Morgalo owes in restitution, costs and fines. In each case, the forms reflect that the payments are due "within the first ___ months of supervision/release from custody." Morgalo Pet. Exs. A-E. "Supervision" in the context of Pennsylvania's criminal justice system means supervision while on probation or parole. *See* Section 5121(e) of the Crimes Code, 18 Pa.C.S. § 5121(e);[18] *see also* Timothy P. Wile, 12 West's PA Prac., *Pennsylvania Law of Probation and Parole*, Chapter 10

---

[18] Section 5121(e) of the Crimes Code provides:

> As used in this section the phrase 'official detention' means arrest, detention in any facility for custody of persons under charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes; but **the phrase does not include supervision of probation or parole**, or constraint incidental to release on bail.

18 Pa.C.S. § 5121(e) (emphasis added).

26

(2010 ed.). However, the plain meaning of the term "supervision" is "[t]he act of managing, directing, or overseeing persons . . . ." *Black's Law Dictionary* at 1576. Thus, "supervision" could refer to one's time while on parole or probation, or within the prison walls. Similarly, since "custody" is defined as "[t]he care and control of a . . . person for inspection, preservation, or security," the phrase "release from custody" could mean either release to community corrections, or release on parole and/or after the maximum sentence release date has been reached. *Id.* at 441.

Moreover, where the blank between "first" and "months" is not completed, the payments *could* begin immediately upon supervision/release from custody. Even assuming that it was clear to Morgalo and the Department that "supervision" and "release from custody" refer to release from incarceration, and only those orders in which the blank between "first" and "months" is filled in require payment upon or after release from official detention, the June 23, 2003 sentencing order requires payment "**within the first ___17___ months of supervision/release from custody[,]**" Morgalo Pet. Ex. A (emphasis added), and the April 26, 2004 sentencing order requires payment "**within the first parole months of supervision/release from custody**." Morgalo Pet. Ex. B (emphasis added). Therefore, it is possible that those monies are to be paid while he is incarcerated and others are to await his supervision/release.

Based on the above, we hold that the trial court's sentencing orders in this case are grossly ambiguous. Under the circumstances, not only did Section 3.A.5 of the Department's Debt Collection Manual require the Department to seek clarification of the sentencing orders in this precise circumstance, but this Court has held that where a sentencing order is ambiguous, "there is support for

27

transferring [the matter] to the sentencing court for resolution." *Harrison v. Pa. Dep't of Corr.*, 860 A.2d 196, 199 (Pa. Cmwlth. 2004). The Supreme Court has likewise held that the sentencing judge is best qualified to resolve interpretations of his or her orders. *Commonwealth v. Isabell*, 467 A.2d 1287 (Pa. 1983). The Department did not do that in this case.

Although it is clear that the Department is statutorily authorized to collect monies from inmate accounts without a trial court order specifically triggering the deductions, here it is unclear whether the trial court's order requires all or certain of Morgalo's payments to begin only at or after parole. Further if, as Morgalo claims, his payment obligations were triggered only upon his parole/release, and he was not paroled/released between his June 23, 2003, April 26, 2004, September 13, 2004 and July 10, 2008 sentences, his claims that those monies were prematurely deducted may be valid.[19] Because it does not appear

---

[19] The Petition reflects that Morgalo was sentenced on June 23, 2003 for a matter docketed in 2002. According to the April 26, 2004 order issued under another 2002 docket number, he was sentenced to serve 6 to 23 months to be served simultaneously with the June 23, 2003 order. Because it is likely that both sentences related to crimes Morgalo committed before he was sentenced in June 2003, he could have been continuously incarcerated from June 23, 2003, or he could have been paroled between the June 23, 2003 and April 26, 2004 sentences. The new sentence could also be related to a crime committed during his incarceration.

Whether Morgalo was paroled from or fully served his June 23, 2003 and April 26, 2004 concurrent 6 to 23-month sentences, he could have been released before his next charge docketed in 2004, for which he was sentenced on September 13, 2004. Or, he could have committed a crime during his incarceration and this sentence merely extended his prison stay.

The two July 10, 2008 orders related to third-degree murder (2007 docket number) and theft (2006 docket number) reflect that Morgalo was credited for time he was incarcerated between December 1, 2006 and July 10, 2008. Morgalo Petition Exs. D, E. Reference to a firearm on the theft sentencing sheet makes it likely that Morgalo was on parole from or had fully served his 6 to 23-month September 13, 2004 sentence (by mid-August of 2006) before he began serving time on December 1, 2006. The impact of the third-degree murder sentence sheet's statement that Morgalo "shall be kept separate from Marcus R. Allen (HJ-7463 (SCI-Somerset)[)] and David Cooper [(HL-9533 SCI-Huntington)]," is unclear. It could have been

with certainty that the law precludes Morgalo's claims, doubt exists as to whether the Department's demurrer should be sustained. Accordingly, we are constrained to overrule it. *Pa. State Lodge, Fraternal Order of Police*. Therefore, the Department's demurrer is overruled.

Based on the foregoing, the Department's preliminary objections are overruled.

_____
ANNE E. COVEY, Judge

---

necessary because the men participated in the crime, because they posed a threat to Morgalo's safety, or because Morgalo committed the crime against a prisoner before he completed his September 13, 2004 sentence. Morgalo Petition Ex. D.

Nevertheless, since it is clear that Morgalo has been continuously incarcerated since at least December 1, 2006, whether deductions related to any of his sentences were permitted to be made thereafter and relative to which sentences remain at issue.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Morgalo,                    :
                    Petitioner      :
                                    :
            v.                      :
                                    :
Sandra Gorniak,                     :
(SCI Albion Accountant)             :
                                    :
            v.                      :
                                    :
Montgomery County Clerk of          :
Courts,                             :   No. 489 M.D. 2013
                    Respondents     :

# O R D E R

AND NOW, this 8th day of March, 2016, the Pennsylvania Department of Corrections' (Department) preliminary objections to Michael Morgalo's (Morgalo) Request to Stop Deduction(s) and Return of Monies from Inmate's Account (Petition) are overruled. Accordingly, the Department is directed to file an answer to the Petition within 30 days of this Court's order.

_____

ANNE E. COVEY, Judge