J-A27023-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: RISPERDAL LITIGATION | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| JONATHAN SAKSEK | : | |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | No. 576 EDA 2015 |
| | : | |
| JANSSEN PHARMACEUTICALS, INC., | : | |
| JOHNSON & JOHNSON COMPANY, | : | |
| JANSSEN RESEARCH AND | : | |
| DEVELOPMENT, LLC, | | |

Appeal from the Judgment Entered February 12, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  February Term, 2014, No. 00183,
March Term, 2010, No. 296

| | | |
|---|---|---|
| IN RE: RISPERDAL LITIGATION | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| JOSHUA WINTER | : | |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | No. 590 EDA 2015 |
| | : | |
| JANSSEN PHARMACEUTICALS, INC., | : | |
| JOHNSON & JOHNSON COMPANY, | : | |
| JANSSEN RESEARCH AND | : | |
| DEVELOPMENT, LLC, | | |

Appeal from the Judgment Entered February 10, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  March Term, 2010, No. 296,
March Term, 2014, No. 01170

BEFORE:   PANELLA, J., RANSOM, J., and FITZGERALD*, J.

_____

*   Former Justice specially assigned to the Superior Court.

MEMORANDUM BY PANELLA, J.                    **FILED NOVEMBER 13, 2017**

In these consolidated appeals, Appellants, Jonathan Saksek and Joshua Winter, appeal from the judgments entered in the Philadelphia County Court of Common Pleas. Appellants contend the trial court erred in determining that their claims were barred by the statute of limitations. Therefore, Appellants argue the orders granting summary judgment in favor of Appellees, Janssen Pharmaceuticals, Inc., Johnson & Johnson, and Janssen Research & Development, LLC, were improper. We affirm.

Appellees developed and manufactured risperidone, an atypical antipsychotic for the treatment of schizophrenia in adult patients. In 1993, the Food and Drug Administration granted approval to Appellees to market risperidone for this purpose. And they brought it to market under the brand name Risperdal.

In 1997, at the age of 17, Winter was prescribed Risperdal for the treatment of anger issues. He remained on Risperdal until 1998, at which point his physician discontinued Winter's use of the medication. By December 31, 1998, Winter observed he was suffering from unexplained weight gain and gynecomastia.[1]

---

[1] Merriam-Webster's online dictionary defines gynecomastia as "excessive development of the breast in the male." http://www.merriam-webster.com/dictionary/gynecomastia (last visited August 7, 2017).

In 1998, at the age of 11, Saksek was prescribed Risperdal to treat attention deficit disorder, attention deficit hyperactivity disorder, and bipolar disorder.[2] He remained on Risperdal until 2004. Saksek admitted he observed unexplained weight gain concurrent with an increase in his breast size by December 31, 2002.

As early as 2003, medical journals began exploring the link between Risperdal usage and the development of gynecomastia. Additionally, in October 2006, the Risperdal label was updated with warnings indicating "gynecomastia was reported in 2.35% of risperidone-treated patients." Trial Court Opinion, 1/13/14, at 8 (citations to the record omitted). In 2013, Appellants learned, through a television commercial, that other Risperdal users with gynecomastia had pursued lawsuits against Appellees. Based upon this information, Saksek filed a complaint against Appellees on February 4, 2014, and Winter filed a complaint on March 10, 2014.

Both complaints were filed as part of the *In re Risperdal* mass tort program, and incorporated allegations found in the master complaint.[3]

_____

[2] **See** U.S. Food & Drug Administration, *Understanding Unapproved Use of Approved Drugs "Off Label,"* available at https://www.fda.gov/forpatients/other/offlabel/default.htm (last visited August 24, 2017).

[3] The **In Re Risperdal® Litigation** mass tort program was formed on May 26, 2010, as a depository for the filings of pleadings, motions, orders, and other documents common to all Risperdal cases in the Philadelphia County Court of Common Pleas. **See** Case Management Order 1, 5/26/10, **In Re Risperdal® Litigation**, March Term 2010 No. 296.

Appellants raised identical claims against Appellees of (I) negligence; (II) negligent design defect; (III) fraud; (IV) strict liability failure to warn; (V) strict liability design defect; (VI) breach of express warranty; (VII) breach of implied warranty; (VIII) violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201, *et. seq.*; (IX) unfair and deceptive trade practices; (X) conspiracy; (XI) punitive damages; and (XII) medical expenses incurred by parent. Appellees denied Appellants' allegations and asserted several defenses, including the statute of limitations defense.

On February 10, 2014, Appellees filed a motion for partial summary judgment on the master docket disputing the validity of the punitive damages claim. The trial court granted Appellees' motion on May 2, 2014, and dismissed all plaintiffs' claims for punitive damages. Further, the trial court denied a subsequent motion for reconsideration of the summary judgment order on July 18, 2014.

In August 2014, Appellees filed motions for summary judgment in both Appellants' cases, asserting the statute of limitations barred both actions. Appellants responded, arguing that because Appellees concealed the link between Risperdal usage and the development of gynecomastia in adolescent males, the discovery rule and the doctrine of fraudulent concealment tolled the statute of limitations.

On January 13, 2015, the trial court granted Appellees' motion in Winter's case, holding that Winter's claims were barred because he had

commenced his action after the applicable statutes of limitation had expired. *See* Trial Court Opinion, 1/13/15, at 1. Further, the trial court found that the application of the discovery rule or claims of fraudulent concealment could not save Winter's claims, as Winter knew of his injury at the time he developed breast tissue, and should have reasonably known of the link between his gynecomastia and Risperdal usage by June 30, 2009, at the latest. *See id*.

Subsequently, on January 30, 2015, the trial court granted Appellees' motion for summary judgment against Saksek, holding the rationale underlying its decision in Winter's case controlled. *See* Trial Court Opinion, 1/30/15, at 2-3 (unpaginated).

The parties later stipulated to the dismissal of Appellants' claims against Excerpta Medica Incorporated and Elsevier, Inc., and the trial court simultaneously entered a judgment to that effect. Both Winter and Saksek filed timely notices of appeal. This Court consolidated Winter's and Saksek's appeals.

On appeal, Appellants contend the trial court erred in granting Appellees' summary judgment motions and dismissing Appellants' tort claims on statute of limitations grounds.[4] *See* Appellants' Brief, at 3. While

---

[4] In its January 13, 2015 opinion, the trial court divided Appellants' claims into four categories based upon the applicable statute of limitations: tort claims (*i.e.*, negligence; negligent design defect; fraud; strict liability, failure to warn; strict liability, design defect; unfair and deceptive trade practices;
*(Footnote Continued Next Page)*

Appellants admit the timing of their complaints implicates the statute of limitations, Appellants argue that in both cases the trial court usurped a jury's role by determining several genuine issues of material fact related to the question of whether the discovery rule or the doctrine of fraudulent concealment applied to toll the relevant statute of limitations.[5] **See id**., at 27.

*(Footnote Continued)* ────────────

and conspiracy); warranty claims (*i.e*., breach of express warranty; and breach of implied warranty), UTPCPL claims; and miscellaneous claims (*i.e*., medical expenses incurred by parents). **See** Trial Court Opinion, 1/13/14, at 4, n.4, 5.

After categorizing the claims, the trial court concluded that the warranty claims, UTPCPL claim, and miscellaneous claims could not be tolled by the application of the discovery rule or the doctrine of fraudulent concealment and therefore dismissed these claims as untimely without analyzing the application of either rule to toll their respective statute of limitations. **See id**. Appellants do not appear to challenge this aspect of the trial court's summary judgment orders; in fact, Appellants focus their appellate brief solely on the alleged error the trial court committed when it dismissed their *tort* claims. **See** Appellants' Brief, at 21, 23. Therefore, Appellants have not preserved any challenges related to this issue, and we will not address the trial court's decision to dismiss Appellants' claims of breach of implied warranty, breach of express warranty, violation of Pennsylvania's UPTCPL, or medical expenses incurred by parents. **See Umbelina v. Adams**, 34 A.3d 151, 161 (Pa. Super. 2011).

[5] Through their respective notices of appeal, Appellants purport to appeal all previously non-final orders that merged into and were made appealable by the entry of the final judgment. **See** Notice of Appeal (Saksek), 3/6/15, at 2 (unpaginated); Notice of Appeal (Winter), 3/12/15, at 2 (unpaginated). These orders include the order of May 2, 2014, entering partial summary for Appellees, the order entered July 18, 2014, denying Appellants' motion for reconsideration, and the orders entered January 13 and 30, 2015, entering summary judgment on the rest of Appellants' claims. However, through their appellate brief, Appellants *only* challenge the entry of summary judgment
*(Footnote Continued Next Page)*

We review a challenge to the entry of summary judgment as follows:

[We] may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. *See* Pa.R.C.P. Rule 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we review the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*E.R. Linde Const. Corp. v. Goodwin*, 68 A.3d 346, 349 (Pa. Super. 2013) (citation omitted; brackets in original).

The trial court granted summary judgment after determining Appellants' causes of action were barred due to their failure to file their claims within the applicable statute of limitation period. "[A] cause of action accrues, and thus the applicable limitations period begins to run, when an injury is inflicted." *Wilson v. El-Daief*, 964 A.2d 354, 361 (Pa. 2009) (citation omitted). Thus, in most situations, once the period prescribed by

_____

*(Footnote Continued)*  ————————————

entered January 13 and 30, 2015, respectively. Thus, we restrict our review accordingly.

- 7 -

the applicable statute has passed, the plaintiff is barred from bringing suit. *See Gleason v. Borough of Moosic*, 15 A.3d 479, 484 (Pa. 2011).

Appellants concede the applicable statute of limitations period for their tort claims is two years. *See* Appellants' Brief, at 23. *See also* 42 Pa.C.S.A. § 5524(7). Further, the parties agree that more than two years had elapsed between the infliction of Appellants' alleged injuries and the filing of their complaints. *See* Appellants' Brief, at 25-26; Appellees' Brief, at 5. However, Appellants argue that a jury was required to determine if the filing periods for their tort claims were tolled by the application of the discovery rule and/or Appellants' fraudulent concealment. *See* Appellants' Brief, at 27, 46.

We first address Appellants' contention that the trial court incorrectly determined that the discovery rule did not apply to toll the applicable statute of limitations. *See id*., at 27. The discovery rule acts as an exception to the principle that a party cannot act upon his claims once the prescribed statutory period has expired. *See Fine v. Checchio*, 870 A.2d 850, 858 (Pa. 2005). Instead, in situations

> where the complaining party is reasonably unaware that his or her injury has been caused by another party's conduct, the discovery rule suspends, or tolls, the running of the statute of limitations. To successfully invoke the discovery rule, a party must show the inability of the injured, despite the exercise of due diligence, to know of the injury or its cause. A party fails to exercise reasonable diligence when it fails to make an inquiry when the information regarding the injury becomes available. Mistake, misunderstanding or lack of knowledge in themselves do not toll the running of the statute.

*Mariner Chestnut Partners, L.P. v. Lenfest*, 152 A.3d 265, 279 (Pa. Super. 2016) (internal citations and quotation marks omitted).

Reasonable, or due diligence, is an objective standard "but takes into account individual capacities and society's expectations of attention, knowledge, intelligence and judgment for citizens to protect their own interests." *Simon v. Wyeth Pharm., Inc.*, 989 A.2d 356, 365 (Pa. Super. 2009) (citation and internal quotation marks omitted).

> Therefore, when a court is presented with the assertion of the discovery rule[']s application, it must address the ability of the damaged party, exercising reasonable diligence, to ascertain that he has been injured and by what cause. Since this question involves a factual determination as to whether a party was able, in the exercise of reasonable diligence, to know of his injury and its cause, ordinarily a jury would decide it. Where, however, reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, the court determines that the discovery rule does not apply as a matter of law.

*Fine*, 870 A.2d at 858-859 (internal citations omitted).

> Nevertheless, the party asserting application of the discovery rule bears the burden of proof, and Pennsylvania courts have not hesitated, where appropriate, to find as a matter of law that a party has not used reasonable diligence in ascertaining his or her injury and its cause, thus barring the party from asserting his or her claim under the discovery rule.

*Gleason*, 15 A.3d 479, 485-486 (internal citations omitted).

The crux of Appellants' argument is that summary judgment was improper due to the existence of several genuine issues of disputed fact concerning the applicability of the discovery rule. *See* Appellants' Brief, at

27-31. Appellants essentially[6] argue there were two issues of material fact that should have been determined by a jury. **See id**., at 27-45. First, Appellants contend there was a genuine issue of material fact as to when Appellants had "sufficient notice to suspect their breast growth was gynecomastia." **Id**., at 27-28. Second, Appellants maintain there is a genuine issue as to the date they were placed on notice that their gynecomastia was the result of a tortious act by Appellees. **See id**., at 28.

---

[6] In their appellate brief, Appellants argue there were three issues of material fact that should have been determined by the jury: 1) when Appellants had sufficient notice to suspect their breast growth was gynecomastia; 2) when Appellants were placed on notice their gynecomastia was the result of a tortious act; and 3) whether the exercise of reasonable diligence would have permitted Appellants to discover a causal connection between their gynecomastia and Appellees' conduct. **See** Appellants' Brief, at 27-28, 42. However, the division of the last two issues into distinct issues is based upon a misconception of the applicable law. Appellants purportedly believe that the discovery rule requires "inquiry notice" that a plaintiff's symptoms are the manifestation of tortious conduct *before* a plaintiff is required to use "reasonable diligence" to discover a causal relationship to another's conduct. **See id**., at 24.

As discussed in more detail above, however, the law requires that a party use "reasonable diligence" to determine first, that he has suffered an injury and second, that this injury was caused by another. **See Gleason**, 15 A.3d at 485. Once a party has utilized "reasonable diligence" to gain "actual or constructive notice" of both of these aspects, some courts have described this as a party receiving "inquiry notice," and pinpoint this time as when the limitations period begins to run. **See id**., at 484. Thus, because "inquiry notice" is properly viewed a result of using "reasonable diligence" rather than the inverse, Appellants' third issue is properly viewed as a subset of their second issue, rather than a distinct issue of its own.

Turning to Appellants' first claim, Appellants argue they could not have reasonably known they were injured until they were diagnosed with gynecomastia in 2013. *See id*. Conversely, Appellees claim that Appellants' own pleadings prove that they were aware of their injuries as soon as they occurred, and thus they cannot now feign ignorance. *See* Appellees' Brief, at 10-12.

Our Supreme Court has repeatedly held that "knowledge of 'injury' and 'cause' does not require a precise medical diagnosis…." **Wilson** 964 A.2d at 365 (citations omitted). Thus, a plaintiff is not required to "know the precise medical cause of her injury" before a statute of limitations period begins to run. *Id*., at 364 n.10 (citations omitted).

Here, Appellants repeatedly acknowledge they developed gynecomastia in in 1998 and 2002, respectively. **See** Appellants' Brief, at 26. While Appellants claim the statute of limitations should be tolled because they did not have a diagnosis at that time, the law does not require a diagnosis before the statute begins to run, only awareness of an injury. All of the arguments presented to the trial court claim that Appellants were keenly aware of their injuries as soon as they were incurred. **See** Winter's Response to Summary Judgment Motion, 9/9/14, at 2 ("This case is about Joshua Winter, a young man who ingested [Appellees'] drug, Risperdal, as a minor and developed large, female-like breasts as a result, mentally wounding him deeply and creating a condition that may last for the rest of his life");

Saksek's Response to Summary Judgment Motion, 9/9/14, at 2 ("This case is about Jonathan Saksek, a young man who ingested [Appellees'] drug, Risperdal, as a minor and developed large female-like breasts as a result, mentally wounding him deeply and creating a condition that may last for the rest of his life.")

Appellants attempt to downplay the knowledge of their injuries by arguing that, as was the case in both **Fine** and **Wilson**, the potential confusion as to whether their breasts were temporarily caused by weight gain or were the result of a more permanent medical condition. **See** Appellant's Brief, at 28-31. However, both of those cases are readily distinguishable.

In **Fine**, appellant began to experience numbness after having four wisdom teeth removed by Appellee. **See** 870 A.2d at 854. Appellee repeatedly informed appellant that numbness was a typical side effect that could take up to six months to remedy. **See id**. After a year, appellant began to believe his facial numbness might be permanent and filed suit after the two-year statute of limitations period had run. **See id**., at 854-855.

Our Supreme Court found that because appellant's facial numbness could either be a "temporary physical consequence that resulted from the very nature of the procedure that [appellee] performed on [appellant] or it was a manifestation of [appellant]'s injury, a permanent condition that resulted from underlying nerve damage," a jury, rather than a court, should

decide whether appellant exercised reasonable diligence in ascertaining his injury. *Id*., at 861-862.

Likewise, in **Wilson**, our Supreme Court found that a jury should determine whether the appellant exercised reasonable diligence in ascertaining her injury where appellant experienced constant pain after a surgery but was repeatedly informed by her surgeon, appellee, that he could not discern an injury. **See** 964 A.2d at 365-366.

Unlike the case before us, both of those cases involved an appellant who actively sought, and received, conflicting, medical advice concerning an injury. Because their search resulted in potential confusion about the nature of their injury, our Supreme Court determined that a jury needed to decide if the manner of their search constituted reasonable diligence. Here, in stark contrast, there is no dispute that Appellants did not seek *any* medical advice concerning their breast growth. There cannot be potential confusion about a diagnosis if Appellants did not even seek a diagnosis. As such, we are required to rely upon Appellants' own assertions, that they were aware of their injuries as early as 1998 and 2002, respectively. Thus this argument fails.

Next, Appellants contend there was a genuine issue of material fact as to when they were placed on notice that their injuries were the manifestation of Appellees' tortious conduct. **See** Appellants' Brief, at 27-45. Appellants allege Appellees' actions in concealing the link between Risperdal

usage and gynecomastia in adolescent males significantly hindered their ability to discover that their gynecomastia was the manifestation of Appellees' tortious conduct. *See id*., at 28. Therefore, Appellants argue a jury should have determined when "sufficient information of the gynecomastia-Risperdal link was available to have enabled [Appellants], in the exercise of reasonable diligence, to discover the causal relationship between their breast growth and Risperdal." *Id*., at 27.

> Here, the trial court determined
>
> the existence of the link between Risperdal and gynecomastia was discoverable in October 2006 when Risperdal's label was changed to reflect the connection. Furthermore, the link between Risperdal and gynecomastia was so widely discussed in the mainstream media, and in medical journals, that by June 30, 2009, [Appellants'] inquiry should have been awakened and [they] should have discovered the existence of [their] claims against [Appellees]. Accordingly, as a matter of law, the discovery rule can only toll the statutes of limitation until a maximum date of June 30, 2009 for plaintiffs who ingested Risperdal prior to October 2006.

Trial Court Opinion, 1/13/14, at 15.

Appellees agree with the trial court that the statute of limitations mandated the grant of summary judgment, but contend that if the discovery rule applied, it would have only tolled the statute of limitations until October 2006, when the Risperdal label was changed to include a warning about gynecomastia. *See* Appellees' Brief, at 23. After this point, Appellees argue, a party exercising even a modicum of diligence would have been able to discover the cause of their injuries. We agree.

As noted above, the onus of proving the applicability of the discovery rule falls squarely upon the person, or people, asserting its applicability. **See Gleason** 15 A.3d at 485-486. Thus, in order to meet their burden, Appellants were required to establish they acted "with reasonable diligence in determining the fact and cause of [their] injur[ies] but [were] unable to ascertain it." **Nicolaou v. Martin**, 153 A.3d 383, 389 (Pa. Super. 2016) (*en banc*) (citation omitted). Appellants were aware of their injuries when they began experiencing unexplained weight gain—and breast growth—after starting Risperdal treatment in 1998 and 2002. However, from 1998 and 2002 until 2013, when Appellants were notified of the commercial claiming a link between gynecomastia and Risperdal, they did *nothing* to uncover the cause of their unexplained breast growth and weight gain. Appellants cannot hope to establish that they acted with reasonable diligence, when they admit that they failed to act at all.

Their breasts were there, and had been there, for years. And then, in October 2006, the label on Risperdal changed, expressly linking usage of the drug to gynecomastia. Their breasts were clearly not temporary by 2006. Accordingly, by that date, "reasonable minds would not differ in finding that" Appellants knew, or should have known, of their injuries and the cause of those injuries by this point. **Fine**, 870 A.2d at 858. As such, the discovery rule is not applicable to toll the relevant statutes of limitations. Pursuant to 42 Pa.C.S.A. § 5524(7), Appellants should have commenced their actions no

later than October 31, 2008[7]—over five and a half years prior to their February 4, 2014 and March 10, 2014 filing dates. Thus, the trial court's conclusion that the discovery rule did not apply to toll the statute of limitations was correct, and Appellants can garner no relief on this argument.[8]

Finally, Appellants argue the trial court erred by granting Appellees' motions for summary judgment as Appellees' fraudulent concealment of the link between Risperdal usage and gynecomastia is an alternative basis for tolling the statute of limitations. **See** Appellants' Brief, at 46-49.

Similar to the discovery rule, the doctrine of fraudulent concealment tolls the applicable statute of limitations under specific circumstances. Based on a theory of estoppel, the doctrine holds that a "defendant may not invoke the statute of limitations, if through fraud or concealment, he causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts." **Fine**, 870 A.2d at 860 (citation omitted). The doctrine does not

---

[7] Pursuant to Pennsylvania's Minor Tolling Statute, Saksek's claims did not accrue until February 10, 2005, the date of his eighteenth birthday. **See** 42 Pa.C.S.A. § 5533(b)(1)(i). Thus, we have used this date to calculate the beginning of the applicable two-year statute of limitations period.

[8] While the trial court discussed the October 31, 2006 tolling date for the discovery rule that we have adopted, it ultimately determined Appellants' claims began to run on June 30, 2009. This difference in date does not affect our analysis, as Appellants' claims are patently untimely pursuant to either of these dates. Further, an appellate court can affirm on any basis. **See In re Jacobs**, 15 A.3d 509 n.1 (Pa. Super. 2011) ("We are not bound by the rationale of the trial court, and may affirm on any basis.")

require proof of an intent to deceive, but requires proof of an unintentional deception. ***See id***. However,

> [t]he defendant must have committed some affirmative independent act of concealment upon which the plaintiffs justifiably relied. Mere mistake or misunderstanding is insufficient. Also, mere silence in the absence of a duty to speak cannot suffice to prove fraudulent concealment.

***McClean v. Djerassi***, 84 A.3d 1067, 1070 (Pa. Super. 2013) (citation omitted).

As with the discovery rule, Appellants are held to a standard of reasonable diligence and "a statute of limitations that is tolled by virtue of fraudulent concealment begins to run when the injured party knows or reasonably should know of his injury and its cause." ***Fine***, 870 A.2d at 861. Further, "[t]he plaintiff has the burden of proving fraudulent concealment by clear, precise, and convincing evidence." ***Id***., at 860 (citation omitted).

Appellants maintain that Appellees have spent years trying to conceal the relationship between Risperdal and gynecomastia. ***See*** Appellants' Brief, at 46-49. To support this claim, Appellants point to Appellees' actions in misreporting the incidence of gynecomastia following Risperdal use, encouraging off-label use of Risperdal, and a 2003 article that Appellees approved of which disputed the link between Risperdal usage and gynecomastia. ***See id***., at 47.

However, as noted, "reasonable minds cannot differ" in concluding that both Appellants knew of their injuries, and should have known of the cause

of their injuries by October 31, 2006, at the latest. Thus, even assuming that fraudulent concealment served to toll the relevant statute of limitations until October 31, 2006, Appellants were required to file their tort claims by October 31, 2008, in order to preserve them. This conclusion defeats the assertion that fraudulent concealment tolled the relevant statute of limitations until 2013, just as it defeated the assertion that the discovery rule tolled the relevant statute of limitations until 2013.

Accordingly, the trial court did not abuse its discretion in determining that the doctrine of fraudulent concealment did not toll the relevant statute of limitations, and granting Appellees' motions for summary judgment. Appellants' final issue merits no relief.

Judgments affirmed.

Judge Ransom joins the memorandum.

Justice Fitzgerald concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/13/2017

- 18 -