15 A.3d 479

David and Leslie GLEASON, Individually and as Parents of Lacie L. Gleason, a Minor, Laura L. Gleason, and Derek W. Gleason, Appellants

v.

BOROUGH OF MOOSIC, Pennsylvania, Michael J. Pasonick, Jr. and M.F. Ronca & Sons, Appellees.

Supreme Court of Pennsylvania.

Argued Oct. 20, 2010.

Decided April 4, 2011.

354

Aaron Jason Freiwald, Damien Zillas, Layser & Freiwald, P.C., Louis C. Ricciardi, Philadelphia, for David & Leslie Gleason parents of L.L.G. a minor, Laura Gleason & Derek Gleason.

Amy L. Coryer–Host, James Dennis Young, Lavery, Faherty, Young & Patterson, P.C., Harrisburg, for Borough of Moosic, Pennsylvania.

Joseph Francis McNulty, Post & Schell, P.C., Allentown, for M.F. Ronca & Sons.

James A. Doherty, Jr., James Andrew Doherty III, Doherty Law, LLC, Michael J. Pasonick, Jr. and Associates.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice McCAFFERY.

We review here the Superior Court's affirmance of the trial court's order granting Appellees' motions for summary judgment and dismissing Appellants' negligence action on the basis that their lawsuit was filed outside the applicable statute of limitations. Specifically, we consider whether the lower courts erred in determining that the discovery rule exception did not toll the limitations period. Because, under the specific factual scenario presented here, a jury question existed as to whether the exercise of reasonable diligence could have permitted Appellants to discover their injury and its cause, we determine that summary judgment was improperly granted and, accordingly, we reverse.

This case concerns so-called "toxic mold" contamination. In 1993, a public sewer system was constructed in Moosic, Pennsylvania, by the Borough of Moosic ("the Borough"), pursuant to a written contract it executed with a construction company, M.F. Ronca & Sons ("Ronca") and an engineering firm, Michael J. Pasonick, Jr. & Associates ("Pasonick") (collectively "Appellees"). Construction of the sewer system required the demolition and rebuilding of Gleason Drive in Moosic, including that portion of the roadway adjacent to the home of Appellants, David and Leslie Gleason, and their children, Laura, Derek, and Lacie. Shortly after the roadway had been rebuilt, during a one-week period of repeated, heavy rains, Appellants' basement flooded three times. David Gleason believed the flooding occurred because the pitch of the rebuilt roadway drained excessive rainwater onto Appellants' property. He contacted the Borough, which installed a corrective swale that diverted most rainwater runoff away from Appellants' residence, and the incidents of flooding ceased.

Mrs. Gleason's mother, Lorraine Goeringer, who is not a party to this action, had lived in a finished, three-room apartment in the basement of Appellants' home since 1981. She moved out in 1996 or 1997 for undisclosed reasons. In the late summer of 1997, David and Derek Gleason began to renovate

the basement with the intention of creating a single, open recreation room for the family. During this process, they removed all interior walls and all carpeting. Upon doing so, they noticed water-stained and moldy sheetrock along the exterior walls, discolored insulation and building studs, and black, green, and white discoloration on the underside of the wall-to-wall carpeting. Shortly after the removal of the interior walls and carpeting, David Gleason fell ill, and the renovation project was never completed.

Beginning in the fall of 1997, and over the course of the next several years, all members of the Gleason household were repeatedly stricken with a variety of physical ailments. Mr. Gleason experienced a chronic, hacking cough, shortness of breath, repeated vomiting, burning eyes, and fatigue. Mrs. Gleason developed uterine polyps, migraine headaches, and fungal infections on her fingernails and toenails. Derek Gleason experienced frequent, recurrent cold symptoms, and developed acne on his chest, face, and back, as well as sinus polyps that required surgical removal. Laura Gleason suffered recurrent nosebleeds and boils on her skin, and Lacie Gleason had frequent bouts of bronchitis and developed scaly, itchy skin. Each family member was treated by various physicians for their ailments during the years from 1997 to 2000.

In early 2000, Mr. Gleason watched a television program entitled "48 Hours: Is Your Home Making You Sick?" The program documented a case in Texas in which a residence contaminated with mold caused the family living in the residence to fall ill with symptoms that were similar to the ailments Appellants had been experiencing. Thereafter, suspecting that their home might be contaminated with mold, Appellants retained counsel, who engaged Indoor Air Solutions, Inc. ("IAS") to test the air quality in Appellants' home. The test was conducted in March 2000, and IAS prepared a report, dated April 10, 2000, detailing the results. The report showed that the air throughout the home, particularly the air in the basement, was populated by fungal and bacterial organisms in counts that vastly exceeded recommended safe levels.

Moreover, the report noted that several of the species of organisms discovered were highly pathogenic and potentially life-threatening, and that immediate corrective action was required. Appellants abandoned the home and the majority of its contents, including all clothing and furniture, on June 1, 2000.

On October 17, 2001, Appellants filed a complaint against Appellees alleging negligence and breach of contract. Among other things, the complaint alleged that the negligent construction of the roadway and corrective swale had caused rainwater runoff to accumulate, which had resulted in permanent moisture around the foundation of Appellants' home that caused the formation of toxic mold. On November 27, 2007, after the pleadings had been closed and discovery was complete, the Borough filed a motion for summary judgment, alleging the following grounds for relief: 1) the Borough had no direct or vicarious liability because the roadway had been constructed by Ronca, and inspected by Pasonick, and both entities were independent contractors, not employees of the Borough; 2) the Borough had immunity under the Political Subdivisions Tort Claims Act, 42 Pa.C.S. § 8541, *et seq.*, and Appellants had not shown that any exceptions to immunity applied; and 3) Appellants' lawsuit was barred by the statute of limitations applicable to negligence actions.[1]

Appellants did not file an answer to the Borough's motion for summary judgment. On December 21, 2007, Ronca filed a cross-motion for summary judgment claiming that (1) Appellants' action was barred by the statute of limitations applicable to negligence actions; and (2) Appellants' breach of contract action was barred as a matter of law because Appellants were not intended third-party beneficiaries of the contract between Ronca and the Borough. On February 11, 2008, Appellants filed an answer to Ronca's cross-motion for summary judgment, claiming that the discovery rule tolled the statute of limitations.[2]

1. The statute of limitations for a cause of action in negligence is two years. 42 Pa.C.S § 5524.

2. In their answer to Ronca's cross-motion for summary judgment, Appellants stated that they did not oppose the Borough's motion for

On March 31, 2008, Pasonick filed an answer opposing the Borough's motion for summary judgment, challenging the Borough's claim that no material issue of fact existed regarding its governmental immunity. That same date, Pasonick filed its own motion for summary judgment raising the same legal claims as contained in Ronca's cross-motion for summary judgment, and including the additional assertion that Pasonick had not performed any of the actual construction work at issue.

On April 23, 2008, the trial court granted Appellees' respective motions for summary judgment. The court determined that Appellants' cause of action was barred by the two-year statute of limitations applicable to negligence actions. Appellants appealed to the Superior Court and asserted that the entry of summary judgment was improper because they had been unable, through reasonable diligence, to discover their injury and its cause until early 2000, and therefore, the applicable statute of limitations had been tolled until that time.[3]

In a divided memorandum decision, the Superior Court affirmed. The majority credited, and appeared to adopt, the trial court's reasoning that Appellants knew the basement initially had flooded in 1993, and should have known of their injury and its cause by 1997, when they saw mold and discoloration and began to experience symptoms of illness during and after the aborted basement renovation. Thus, the Superior Court majority reasoned that the two-year statute of limitations applicable to tort claims required Appellants to have filed their action no later than 1999.

Judge Robert Colville dissented. He noted that following the initial flooding, a corrective swale had been installed and the flooding had ceased. Judge Colville also noted that David Gleason had testified that he believed the problem had been

summary judgment, although both motions sought summary judgment, in part, on the basis that Appellants' suit was time-barred.

3. Although there are five Appellants and thus more than one alleged injury, for simplicity and ease of discussion, we will refer to the alleged injuries in the collective singular as Appellants' or their "injury."

solved when the swale had been installed, and that it was only after a more recent investigation that he had learned that the swale continued to permit excess rainwater to accumulate around the foundation of the home. Judge Colville additionally noted that Appellants saw various physicians between 1997 and 2000, and Appellants were not informed by any physicians that their symptoms were or even could have been caused by, or related to, exposure to mold. In his view, summary judgment was not warranted because a genuine issue of material fact existed as to whether Appellants, through the exercise of reasonable diligence, should have ascertained that the allegedly negligent construction had caused mold to form in their home and that the mold was making them ill.

We granted allowance of appeal to answer the following question:

Should plaintiffs who attempt to invoke Pennsylvania's narrow discovery rule to toll the statute of limitations be required to prove their "reasonable diligence" in order to survive summary judgment, or should the determination of plaintiffs' "reasonable diligence" necessarily be submitted to the jury? *See Wilson v. El–Daief* [600 Pa. 161], 964 A.2d 354 (Pa.2009).

 Summary judgment is only appropriate in cases where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035.2(1). In considering a motion for summary judgment, a court views the evidence in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Fine v. Checcio,* 582 Pa. 253, 870 A.2d 850, 857 (2005). When reviewing whether there are genuine issues of material fact, this Court's standard of review is *de novo;* we need not defer to determinations made by lower courts; and our scope of review is plenary. *Id.* at n. 3.

 Generally, a statute of limitations period begins to run when a cause of action accrues; *i.e.,* when an injury is inflicted and the corresponding right to institute a suit for

damages arises. *Wilson v. El–Daief,* 600 Pa. 161, 964 A.2d 354, 361 (2009). It is the duty of the party asserting a cause of action to use all reasonable diligence to properly inform him-or herself of the facts and circumstances upon which the right of recovery is based and to institute suit within the prescribed period. *Hayward v. Medical Center of Beaver County,* 530 Pa. 320, 608 A.2d 1040, 1042 (1992). Generally, once the prescribed statutory period has expired, the complaining party is barred from bringing suit. *Id.* at 1043. However, the discovery rule acts as an exception to this principle, and provides that where the complaining party is reasonably unaware that his or her injury has been caused by another party's conduct, the discovery rule suspends, or tolls, the running of the statute of limitations. *Fine, supra* at 858–859.

Pennsylvania's formulation of the discovery rule reflects a narrow approach "to determining accrual for limitations purposes" and places a greater burden upon Pennsylvania plaintiffs vis-á-vis the discovery rule than most other jurisdictions. *Wilson v. El–Daief, supra* at 364. The commencement of the limitations period is grounded on "inquiry notice" that is tied to "actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice of the full extent of the injury, the fact of actual negligence, or precise cause." *Id.* The discovery rule operates to balance the rights of diligent, injured plaintiffs against the interests of defendants in being free from stale claims, in furtherance of salient legislative objectives. *Id.* at 366 n. 12. The balance struck in Pennsylvania has been to impose a relatively limited notice requirement upon the plaintiff, but to submit factual questions regarding that notice to the jury as fact-finder. *Id.*

Additionally, it is not relevant to the application of the discovery rule whether the prescribed statutory period has expired. *Fine, supra* at 859. The discovery rule applies to toll the statute of limitations in any case in which a party is reasonably unaware of his or her injury at the time his or her

cause of action accrued. *Id.* The point at which the complaining party should be reasonably aware that he or she has suffered an injury and its cause is ordinarily an issue of fact to be determined by the jury due to the fact intensive nature of the inquiry. *Wilson, supra* at 362; *Hayward, supra* at 1043. Only where the facts are so clear that reasonable minds could not differ may a court determine as a matter of law at the summary judgment stage, the point at which a party should have been reasonably aware of his or her injury and its cause and thereby fix the commencement date of the limitations period. *Id.*

The *sine qua non* of the factual inquiry into the applicability of the discovery rule in any given case is the determination whether, during the limitations period, the plaintiff was able, through the exercise of reasonable diligence, to know that he or she had been injured and by what cause. In this context, we have clarified that reasonable diligence is not an absolute standard. As we have stated:

"There are very few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful. This is what is meant by reasonable diligence." Put another way, "the question in any given case is not, what did the plaintiff know of the injury done him? But, what might he have known, by the use of the means of information within his reach, with the vigilance the law requires of him?" While reasonable diligence is an objective test, "it is sufficiently flexible ... to take into account the difference[s] between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question." Under this test, a party's actions are evaluated to determine whether he exhibited "those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interest and the interest of others."

Therefore, when a court is presented with the assertion of the discovery rule's application, it must address the ability of the damaged party, exercising reasonable diligence, to

ascertain that he has been injured and by what cause. **Since this question involves a factual determination as to whether a party was able, in the exercise of reasonable diligence, to know of his injury and its cause, ordinarily, a jury is to decide it. Where, however, reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, the court determines that the discovery rule does not apply as a matter of law.**

*Fine, supra,* at 858–859 (citations and quotations omitted) (emphasis added).

Nevertheless, the party asserting application of the discovery rule bears the burden of proof, *Wilson, supra* at 362, and Pennsylvania courts have not hesitated, where appropriate, to find as a matter of law that a party has not used reasonable diligence in ascertaining his or her injury and its cause, thus barring the party from asserting his or her claim under the discovery rule. *Cochran v. GAF Corp.,* 542 Pa. 210, 666 A.2d 245, 248 (1995).

Here, the Borough and Pasonick both point out that Appellants were aware that their basement had flooded three times in 1993 due to allegedly negligent road and sewer construction.[4] The Borough and Pasonick additionally posit that the uncontested facts show that Appellants' ongoing illnesses started in 1997, during the basement renovation that revealed moldy sheetrock, water stains and discoloration on insulation, carpets, and building studs. On these facts, Pasonick argues, "clearly at this point, any reasonable person would conclude that their ailments were caused by exposure to mold." Pasonick's Brief at 17. Similarly, the Borough argues that had Appellants "exercised reasonable diligence, they would have certainly concluded that the mold in their basement had developed from the flooding incident that occurred prior to 1997 and concluded that their exposure to this mold

4. Only the Borough and Pasonick have filed Appellees' briefs. Ronca has not filed a brief, and has informed this Court that it executed a joint tortfeasor release and settlement with Appellants in the trial court.

caused the medical ailments that they developed immediately following their initial exposure in 1997 to such mold. Based on Appellants' own admissions through the course of their depositions, reasonable minds cannot differ as to this conclusion." Borough's Brief at 22.

Pasonick and the Borough, however, do not recite any facts that would tend to show that Appellants had been informed by any medical personnel or any layperson, for that matter, that their ailments were or even might be mold-related prior to the year 2000. Moreover, Pasonick and the Borough do not assert how or why Appellants should have immediately known or even suspected that their ailments were mold-related. There is no indication in the record that the phrase "toxic mold" entered the nation's lexicon prior to the year 2000, and it cannot be seriously argued that the exercise of reasonable diligence would require one to uncover a relatively new environmental hazard prior to the time it becomes recognized and reported in the media.

Appellants, on the other hand, argue as follows:

The record in this case does not establish any facts that would warrant a finding on summary judgment that the Gleasons should have thought they had a basis for legal action until the toxic mold program Mr. Gleason saw on television in the year 2000. The members of the Gleason family made no connection between the 1993 basement flooding and their various health problems; nor did they make any connection between the 1997 basement renovations and their health problems. Nothing ... suggest[s] that the Gleasons should have been awakened to inquire sooner [than 2000].

To the extent there are questions of material fact as to whether plaintiff[s] had any reason to inquire at all—and that is certainly the case here—then summary judgment is inappropriate. Questions of fact in this regard must be submitted to the jury.

Appellants' Brief at 16.

The interplay between summary judgment principles and application of the discovery rule requires us to consider

whether it is undeniably clear that Appellants did not use reasonable diligence in timely ascertaining their injury and its cause, or whether an issue of genuine fact exists regarding Appellants' use of reasonable diligence to ascertain their injury and its cause. The factual record here included Mr. Gleason's testimony that, unbeknownst to him, although the corrective swale installed by the Borough resolved the initial flooding, it did not prevent excess rainwater runoff from continuously seeping into the foundation of the residence. Thus, the evidence of record, viewed in the proper light, shows that Appellants were unaware that the swale permitted the foundation of their home to be exposed to permanent moisture. Whether Appellants should have acted with greater diligence to investigate the efficacy of the swale more thoroughly can only be seen as an issue of fact.

Further, although Appellants' testimony established that they recognized moldy sheetrock, water stains and discoloration during the 1997 basement renovation, there is no evidence that any medical professional asked them if there was any mold in their environment, or suggested to them that their symptoms and ailments might be caused by or related to mold exposure. Moreover, Appellants' testimony established that prior to the year 2000, they did not know what "toxic mold" was, nor did they suspect that the air in their house might be filled with it. Whether Appellants should have acted with greater diligence to investigate whether the physical irregularities they observed in their basement in 1997 might take microbial wing and contaminate the air throughout their home, and might be connected to their various ailments prior to 2000, must be considered an issue of fact.

As previously explained, the essential question in these matters is whether the injured party, through the exercise of reasonable diligence, knew or should have known of his or her injury and its cause during the limitations period. If no two reasonable minds could differ that the answer is yes, the discovery rule exception to the statute of limitations is not applicable, and the entry of summary judgment is appropriate. If, however, reasonable minds could differ regarding whether

the injury was ascertainable through the exercise of reasonable diligence during the limitations period, the entry of summary judgment based on expiration of the limitations period is inappropriate.

Here, in a non-unanimous, 2–1 memorandum opinion, the Superior Court determined that summary judgment was appropriate because reasonable minds could not differ that Appellants' injury and its cause had been ascertainable in 1997, and the statute of limitations had begun to run at that point. We disagree, as did Judge Colville in his dissenting memorandum opinion. Our jurisprudence has recognized that the point at which the complaining party should be reasonably aware that he or she has suffered an injury and should have identified its cause is ordinarily an issue of fact to be determined by the jury due to the fact intensive nature of the inquiry. In answer to the question accepted for appeal, it is only where the facts are so clear that reasonable minds cannot differ, that the court may determine the point at which a party should have been reasonably aware of his or her injury and its cause and thereby fix the commencement date of the limitations period as a matter of law. Here, given the disputed and somewhat complex factual scenario presented, we conclude that a jury should determine the point at which Appellants should have reasonably been aware of their injury and its cause. Accordingly, we reverse and remand for further proceedings not inconsistent with this Opinion.

Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE, and Justices EAKIN, BAER, TODD join the opinion.

Justice SAYLOR concurs in the result.