**National Casualty Company v. McCleron**

C.P. of Monroe County, No. 10410 CV 2010.

*Robert J. Grimm* and *Ryan M. Joyce*, for plaintiff.
*David S. Smacchi*, for defendants Mike McCleron and John Kinney.

ZULICK, *J.*, March 21, 2013—On December 16, 2009, defendants Mike McCleron, John Kinney, Alex Ostopick, Joseph Price, and Stephen Beck ("defendants") were carpooling from their respective homes to their place of work at the Tobyhanna Army Depot ("Tobyhanna"). Together they had leased a van for the purpose of carpooling to work, and Stephen Beck was driving the van that day. En route to their jobs at Tobyhanna, the van was involved in a collision. John Kinney sued Stephen Beck and Trygar Transportation, Inc. ("Trygar"), the company which rented the van to the individual defendants. Mr. Kinney alleged that he suffered personal injuries as a result of Mr. Beck's negligence. Trygar was named as a defendant as Mr. Kinney alleged that Mr. Beck, the driver, was acting on behalf of Trygar as their agent, servant or employee.

Trygar maintained an automobile liability insurance policy with plaintiff National Casualty ("NCC"). NCC has moved for summary judgment, alleging that the passengers involved in the collision were acting in the course of their employment at the time, and are thus barred from making claims against NCC's insureds under the Workers' Compensation Act.

## DISCUSSION

"Summary judgment is only appropriate in cases where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Gleason v. Borough of Moosic*, 609 Pa. 353, 361 (2011). A material fact is one that directly affects the outcome of the case. *Bartlett v. Bradford Publ'g, Inc.*, 885 A.2d 562, 568 (Pa. Super. 2008). A court must view the evidence in the light most favorable to the nonmoving party, and all doubts as to a genuine issue of material fact must be resolved against the moving party. *Gleason*, 609 Pa. at 361 (*citing Fine v. Checcio*, 582 Pa. 253 (2005)). When the moving party satisfies its initial burden, the nonmoving party may not simply rest upon the allegations or denials contained in the pleadings, instead the nonmoving party must show there is a genuine issue for trial. *Preferred Fire Prot., Inc. v. Joseph Davis, Inc.*, 984 A.2d 20, 24 (Pa. Super. 2008). A nonmoving party's failure to adduce sufficient evidences on an issue essential to the case establishes that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *Ario v. Ingram Micro, Inc*, 965 A.2d 1194, 1207 n.15 (Pa. 2009).

Plaintiffs argue that defendant Kinney should be barred from suing Mr. Beck and Trygar, as his claim is covered by the Pennsylvania Workers' Compensation Act ("Workers' Comp Act"). 77 P.S. § 1 et seq.

As part of the quid pro quo of the Workers' Compensation Act (the "Act"), an employee surrenders the right to sue an employer in tort for injuries received in the course of employment to obtain the benefit of strict liability. If an injury is compensable under the Act, the compensation

provided by that Act is the employee's exclusive remedy. A compensable injury includes any injury to an employee, regardless of his previous physical condition, arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury.

*Wasserman v. Fifth & Reed Hosp.*, 660 A.2d 600, 604 (Pa. Super. 1995) (internal quotations and citations omitted). In addition to limiting employer liability, the Workers' Compensation Act also immunizes co-employees, except in such instances as where they do intentional harm. 77 P.S. § 72.

Not all injuries suffered by an employee are compensable under the Workers' Comp Act. Only injuries which are sustained in the course and scope employment fall under the act. *Thompson v. W.C.A.B. (Cinema Center)*, 981 A.2d 968, 970 (Pa. Cmwlth. 2009). An injury is only in the course and scope of employment when it occurs on the employer's premises or while furthering the employer's business. 77 P.S. § 411(1). The main question presented here is whether the individual defendants were acting in the course and scope of their employment with Tobyhanna at the time of the crash on December 16, 2009.

Generally, injuries sustained by employees commuting to and from work are not compensable under the Workers' Comp Act. *Bensing v. W.C.A.B. (James D. Morrissey, Inc.)*, 830 A.2d 1075, 1078 (Pa. Cmwlth. 2003). This is grounded in the recognition that in most cases, an

employee traveling to and from work is not furthering the business of his or her employer. *Id.* at 1078. This is known as the "coming and going" rule, which functions as a bar to benefits under the Workers' Comp Act.

However, there is an exception to the "coming and going" rule, known as the "employment contract" exception.

> In order for an employee to sustain the employment contract exception to the coming and going rule, he must establish that: (1) he was commuting to or from work; (2) the employer controlled the means of transportation; and (3) the company provided for the costs and expenses related to the employee's commute.

*Schiavone v. Aveta*, 41 A.3d 861, 867 (Pa. Super. 2012). The first element is not in dispute, as the defendant employees clearly were commuting to their job at Tobyhanna.

The relevant facts about the Tobyhanna carpool program, viewed in a light most favorable to the non-moving parties, are as follows: the defendants were involved in a program administered by the federal government, and offered at Tobyhanna, whereby employees received carpooling vouchers to help defray the costs of commuting. *Lydia Tokash Dep. Tr.* (August 17, 2012) at 6.24-7.1. Tobyhanna required that employees sign up and use qualified carpooling transportation more than fifty percent of the days in a given work month to qualify for funds. *Id.* at 13.21-24. The vendors who wished to provide vans or carpools for employees taking part in the carpool program were also required to obtain approval from Tobyhanna. *Id.*

at 17.8-18.5. Of the vendors who applied, all were granted eligibility to participate in the government program. *Id.* at 18.16-18. The program also made no stipulations as to how the vehicles were to be used, other than that the vouchers were to be used only for commuting expenses. *Id.* at 26.6-13. Approved employees were given vouchers to pay the van or car rental company, and were free to choose amongst any of the several approved vendors. *Id.* at 25.3-6. It appears that the voucher amount was based upon the employee's status (fulltime, part-time, etc.) and that the vouchers were fringe-benefits, and did not come from employees' salaries. *Id.* at 24.9-25 and 12.6-13.2.

The *Schiavone* court held that the control element of the employment contract exception was met where the employee "was involved in an accident during his commute home from work in a vehicle owned and insured by his employer, Aveta. Aveta provided the vehicle as part of Arnoul's employment contract and Aveta paid for all costs of operating the vehicle, including repairs and fuel." *Schiavone*, 41 A.3d at 868. This is consistent with other Pennsylvania decisions. *See, Rox Coal Co. v. W.C.A.B. (Snizaski)*, 768 A.2d 384 (Pa. Cmwlth. 2001) (holding that where transportation to and from work was a *term in the employment contract*, deceased employee's widow *was entitled* to Workers' Comp benefits); *Lesiure Line v. W.C.A.B. (Walker)*, 986 A.2d 901 (Pa. Cmwlth. 2009) (holding that a *flat per diem* granted for travel expenses is *not the kind of control necessary* to satisfy the employment contract exception to the coming and going rule).

In sum, for the employment contract exception to apply,

the employer must exercise significant control over the program. Here, Tobyhanna exercised very little control. Tobyhanna allowed all interested vendors to participate in the program. *Lydia Tokash Dep. Tr.* (August 17, 2012) at 18.16.-18. Tobyhanna did not mandate that employees choose any specific vendor, and instead left the choice of vendors to the employees. *Id.* at 25.3-6. The oversight of compliance with the program's requirements was minimal. *Id.* at 13.25-15.12. Most importantly, Tobyhanna paid a flat rate to all employees, regardless of the length of the commute. The value of the voucher was based upon the employment status of the requesting employees. *Id.* at 24.9-25. This is not enough to establish employer control. *See, Williams v. W.C.A.B. (Matco Elec. Co., Inc.)*, 721 A.2d 1140 (Pa. Cmwlth. 1998).

> It is beyond dispute that *Kear*, *Peer*, and *Bechtel* and this case all share the same material fact pattern. That is, the claimant received some additional compensation based upon the location of his job site or as a travel allowance, but was not directly compensated for his particular expense of commuting. The employers neither provided nor controlled the means of transportation... We believe that Peer and Bechtel state the correct principle of law, i.e., that where travel allowances are not directly related to the expense or distance of the employee's commute, and where the employer does not provide or control the means of transportation used, the contract cannot be deemed to include transportation to and from work.

*Id.* at 1144. As Tobyhanna did not sufficiently control the means of transportation, and the travel allowances were

not related to the distance traveled or the expense of travel, the employment contract exception to the coming and going rule does not apply.

Even if it did, summary judgment would still be denied as this case falls squarely within the bounds of the Ride Sharing Act. 55 P.S. § 695.1.

The Ride Sharing Act provides, *inter alia*:

[a] ride sharing agreement shall mean any one of the following forms of transportation:

(1) the transportation of not more than 15 passengers where such transportation is incidental to another purpose of the driver who is not engaged in transportation as a business. The terms shall include ride sharing arrangements commonly known as car pools and van pools, used in transportation of employees to or from their place of employment.

(2) the transportation of employees to or from their place of employment in a motor vehicle owned or operated by their employer.

(3) the transportation of persons in a vehicle designed to hold no more than 15 people and owned or operated by a public agency or a non-profit organization for that agency's clientele or for a program sponsored by the agency.

55 P.S. § 695.1. The car pooling agreement between the defendant employees clearly falls under the first definition of "ride sharing arrangement." Defendant Kinney was a

passenger in the van, where transportation was incidental to another purpose of the driver (Mr. Beck), who was not engaged in transportation as a business. The Ride Sharing Act specifically states that where it is applicable, the Workers' Comp Act will not apply to injured passengers. 55 P.S. § 695.3. The Ride Sharing Act further provides under 55 P.S. § 695.4 — Liability of Employer:

a. An employer shall not be liable for injuries to passengers and other persons resulting from the operation or use of a motor vehicle, not owned, leased or contracted for by the employer, in a ridesharing arrangement.

### ORDER

And now, March 21, 2013, upon consideration of plaintiff's motion for summary judgment, the response by defendant Kinney, and the briefs and arguments of the parties, it is ordered that plaintiff's motion for summary judgment is denied.