IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kevin A. Bundy,                                  :
                    Petitioner                   :
                                                 :   No.  553 M.D. 2016
            v.                                   :
                                                 :   Submitted:  December 7, 2018
John E. Wetzel, Secretary, PA                    :
Department of Corrections, Tammy                 :
Ferguson, Superintendent, SCI                    :
Benner Township and Frank                        :
Dougherty, Business Manager,                     :
SCI Benner Township,                             :
                    Respondents                  :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                              FILED:  April 12, 2019

            Before this Court is the application for summary relief in the nature of a
motion for judgment on the pleadings filed by John E. Wetzel, Secretary of Corrections
of the Pennsylvania Department of Corrections; Tammy Ferguson, Superintendent of
the State Correctional Institution at Benner Township; and Frank Dougherty, Business
Manager of the State Correctional Institution at Benner Township (collectively, the
Department) to a petition for review[1] (Petition for Review) filed in this Court's original
jurisdiction by Kevin A. Bundy (Bundy), an inmate at a state correctional institution,

_____

[1] Although Bundy initially filed a "complaint" in the court of common pleas, because this
action was transferred to this Court and is in our original jurisdiction, it is titled a "petition for review."
*See* Pennsylvania Rule of Appellate Procedure 1513(e), Pa.R.A.P. 1513(e).

challenging the Department's deduction of funds from his prisoner account to satisfy financial obligations imposed due to his criminal sentences.

## Facts and Procedural History

On November 9, 2015, Bundy initiated this action in the Centre County Court of Common Pleas, naming as defendants various officials of the Department in their official capacities. According to the Petition for Review, Bundy is incarcerated in the State Correctional Institution at Benner Township (SCI-Benner Township). (*Id.* ¶2.) After being committed to a state correctional institution in May 2013, the Department "began deducting 20% of all money received in [Bundy]'s inmate account" pursuant to section 9728(b)(5) of the Sentencing Code, 42 Pa.C.S. §9728(b)(5),[2]

_____

[2] Section 9728(b)(5) of the Sentencing Code provides as follows:

> The county correctional facility to which the offender has been sentenced or the Department of Corrections shall be authorized to make monetary deductions from inmate personal accounts for the purpose of collecting restitution or any other court-ordered obligation or costs . . . . Any amount deducted shall be transmitted by the Department of Corrections or the county correctional facility to the probation department of the county or other agent designated by the county commissioners of the county with the approval of the president judge of the county in which the offender was convicted. The Department of Corrections shall develop guidelines relating to its responsibilities under this paragraph.

42 Pa.C.S. §9728(b)(5). Pursuant to this statute, the Department has developed guidelines, set forth in Policy Statement DC-ADM 005, by which the Department's "business office will . . . deduct from the inmate's account monthly payments for 20% of the preceding month's income provided the account balance exceeds $10.00." COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF CORRECTIONS, POLICY STATEMENT: COLLECTION OF INMATE DEBTS 2-1 (2007), *available at* https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/005%20Collection%20of%20I nmate%20Debts.pdf.

otherwise known as "Act 84," in order to satisfy obligations imposed on him at sentencing. (*Id.* ¶7.) Bundy was subject to financial obligations based on criminal convictions in Jefferson and Clearfield counties. The total amount of fines, costs, and restitution imposed on Bundy by the Jefferson County Court of Common Pleas was $1,135.00, while the total amount of fines, costs, and restitution imposed by the Clearfield County Court of Common Pleas was $8,032.99. (*Id.* ¶¶ 9-10.)

Bundy alleges that as of September 29, 2015, $681.19 had been deducted from his account. (*Id.* ¶11.) The deductions routinely included 20% deductions from any personal gifts that were made by Bundy's family into his account. (*Id.* ¶8.) Bundy alleges that he has no tangible assets and no source of income except for the occasional gifts/support from his family. (*Id.* ¶12.) Bundy further asserts that the deductions from the gifts received from his family affect his ability to maintain sufficient funds in his account to pay for basic necessities such as personal hygiene items, commissary medications, and certain medical costs. (*Id.* ¶14.) Bundy avers that the deductions have also had a negative impact on his ability to pay for costs associated with a Post Conviction Relief Act (PCRA)[3] action that he is currently litigating. *Id.*

At Bundy's sentencing hearing in Jefferson County, the court of common pleas did not consider Bundy's ability to pay the financial obligations it imposed. (*Id.* ¶20.) The court of common pleas also did not inform Bundy that the Department would make 20% deductions from his inmate account to satisfy these financial obligations. *Id.*

Bundy claims that he was not afforded a pre-deprivation hearing and opportunity to be heard and to object to the fines before the first deduction occurred. (*Id.* ¶17.) Bundy asserts that the failure to afford him a pre-deprivation hearing and opportunity to be heard violated his due process rights under the Fourteenth

---

[3] 42 Pa.C.S. §§9541-9546.

Amendment. (*Id.* ¶¶21, 26 29, 34.) Bundy additionally couches his claim as an action in replevin and seeks to have the deducted funds returned to him. (*Id.* ¶27.) Bundy also asserts that the Department could not make deductions from monetary gifts that were made to him by his family because his criminal sentence was imposed on him individually and not on his family, and that pursuant to Act 84 the Department may only deduct wages earned from prison jobs. (*Id.* ¶¶24, 28, 35.) In terms of relief, Bundy is seeking (1) to preliminarily enjoin the Department from making further deductions from his prisoner account; (2) a declaration that the Department's deductions violated his due process rights; and (3) an award of compensatory damages and the costs of litigating the matter. (*Id.* ¶¶A-D.)

The Department preliminarily objected to the Petition for Review on the grounds that the court of common pleas lacked jurisdiction and that the claims were legally insufficient. The court of common pleas agreed that it lacked jurisdiction and transferred the matter to this Court.

In a per curiam memorandum and order, we sustained the preliminary objections. We held that the Department was authorized to deduct funds from a prisoner's account. *Bundy v. Wetzel* (Pa. Cmwlth., No. 553 M.D. 2016, filed October 19, 2016), slip op. at 2. We also held that the Department "may collect costs in the absence of a court order," "[t]he law does not impose prior court authorization as a threshold condition," and "an inmate is not entitled to a hearing on the issue of his ability to pay." *Id.* This Court also held that the fact that the funds originated from gifts was of no moment because the General Assembly had not created an exception for gifts placed in an inmate's account. *Id.*

Bundy appealed to our Supreme Court claiming, *inter alia*, that the deductions violated his due process rights because he received neither notice nor an opportunity to be heard prior to the first deduction; that the deductions from personal gifts from his family violated the legislative intent of Act 84; and that personal gifts

4

from his family were statutorily exempt from deduction pursuant to section 8127 of the Judicial Code, 42 Pa.C.S. §8127.[4] *Bundy v. Wetzel*, 184 A.3d 551, 555-56 (Pa. 2018).

The Supreme Court held that gifts are not exempt from Act 84 deductions; however, it concluded that Bundy's due process argument was more compelling. *Id.* at 556. Since Bundy retained a "property interest in the money in his account," the Court determined that "any dispossession of that interest may only occur in conjunction with 'due process of law.'" *Id.* The Court noted that in *Montanez v. Secretary Pennsylvania Department of Corrections*, 773 F.3d 472 (3d Cir. 2014), the Third Circuit held that "due process requires the Department to afford pre-deprivation notice of the prisoner's total monetary liability to the Commonwealth, the terms of the Department's policy regarding deductions from prisoner accounts, and some means— even if informal—'for inmates to object to potential errors in the deduction process,'" prior to the first deduction occurring. *Bundy*, 184 A.3d at 558 (quoting *Montanez*, 773 F.3d at 486).

While the Court explained that "the interests of inmates must always be balanced against the unique institutional concerns that arise in the prison setting," it concluded that "the provision of notice and a meaningful (if informal) means to challenge the amount of the debt, assert an exemption, or otherwise raise an objection to the deduction scheme, seems unlikely to impact upon" such institutional concerns and that doing so could "potentially avoid erroneous deprivations before they occur." *Id.* (internal quotation marks omitted). Accordingly, the Court agreed with the Third Circuit's holding in *Montanez* that,

> to comply with due process, the Department must, prior to the first deduction: (a) inform the inmate of the total amount of his financial liability as reflected in his sentencing order,

---

[4] Section 8127 of the Judicial Code provides that "[t]he wages, salaries and commissions of individuals shall while in the hands of the employer be exempt from any attachment, execution or other process . . . ." 42 Pa.C.S. §8127.

5

as well as the Department's policy concerning the rate at which funds will be deducted from his account and which funds are subject to the deduction; and (b) give the inmate a reasonable opportunity to object to the application of the Department's policy to his account.

*Id.* at 558-59. The Court explained that these measures would "help protect against errors in the Department's application of its Act 84 deduction policy without significantly impeding its ability to carry out essential functions." *Id.* at 559.

As applied to Bundy's Petition for Review, our Supreme Court noted that Bundy alleged that he was not given pre-deprivation notice concerning the amount he owed, or an opportunity to object, and that he was entitled to an "ability-to-pay hearing." *Id.* The Court explained that "under Pennsylvania law as established by the Commonwealth Court," an ability-to-pay hearing "would only be implicated in relation to Act 84 deductions if there has been a 'material change of circumstances' such as a threat of additional confinement or increased conditions of supervision as a result of unpaid financial obligations." *Id.* (quoting *Ingram v. Newman*, 830 A.2d 1099, 1103 (Pa. Cmwlth. 2003)) (citing *George v. Beard*, 824 A.2d 393, 396 (Pa. Cmwlth. 2003)). However, the Court found Bundy's allegation that the Act 84 deductions had affected his ability to litigate his PCRA petition "resonant because the change-in-circumstances prerequisite, as developed by the Commonwealth Court in *George* and *Ingram*, is grounded on the premise that the prisoner can obtain meaningful merits review of the financial aspects of his sentence through direct appeal or post-conviction proceedings." *Bundy*, 184 A.3d at 559. The Court expounded that "[if] (as asserted) that opportunity is substantially encumbered by the Department's Act 84 deductions, an issue arises whether the *George/Ingram* rule should be extended to encompass such a circumstance." *Id.* Yet, the Court recognized that it would be premature "to address that question at the present, demurrer stage of these proceedings because no

6

impediment has yet been found to exist. If factual development bears out [Bundy]'s position in this regard, however, the question will become salient." *Id.*

Finally, the Court concluded that "[e]ven apart from any concrete harm, if a procedural due process violation is demonstrated, nominal damages may be warranted," and that Bundy had also requested declaratory and injunctive relief. *Id.* Accepting Bundy's well-pleaded allegations as true, the Court concluded that "the law does not say with certainty that no relief is available" and, therefore, that the Commonwealth Court erred in sustaining Bundy's demurer. *Id.* Thus, the Court reversed our order and remanded the matter to us for further proceedings. *Id.*

Following the remand to this Court, the Department filed an answer and new matter to the Petition for Review. In its new matter, the Department alleges that "[o]n or about June 6, 2013, the first deduction occurred to [Bundy]'s inmate account for Act 84 purposes, in the amount of $20.00," that Bundy "received monthly account statements that would identify any Act 84 deduction," and that Bundy "knew or should have known that deductions began in June of 2013." (New Matter ¶¶ 5-7.) The Department's new matter also alleges that Bundy filed his action in the court of common pleas on November 9, 2015, that Bundy's cause of action accrued on June 6, 2013, and that Bundy's claims are barred by the statute of limitations. (*Id.* ¶¶16-18.) Bundy did not file a reply to new matter. Thereafter, the Department filed its application for summary relief in the nature of a motion for judgment on the pleadings alleging, *inter alia*, that Bundy's cause of action accrued on June 6, 2013, that the Petition for Review was filed on November 9, 2015, and that, therefore, Bundy's claim is time-barred by the two-year statute of limitations. Bundy did not respond to the Department's motion. The Department's motion is now ripe for disposition.

7

**Discussion**

Under Rule 1034 of the Pennsylvania Rules of Civil Procedure, a party may move for judgment on the pleadings once "the relevant pleadings are closed, but within such time as not to unreasonably delay the trial." Pa.R.C.P. No. 1034. "A motion for judgment on the pleadings is in the nature of a demurrer"; thus, "all of the opposing party's allegations are viewed as true and only those facts which have been specifically admitted by him may be considered against him." *Trib Total Media, Inc. v. Highlands School District*, 3 A.3d 695, 698 n.2 (Pa. Cmwlth. 2010).

In reviewing a motion for judgment on the pleadings we "may only consider the pleadings themselves and any documents properly attached thereto." *Id.* The motion should only be granted "when the pleadings show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* Further, "the party moving for judgment on the pleadings must admit the truth of all the allegations of his adversary and the untruth of any of his own allegations that have been denied by the opposing party." *Pfister v. City of Philadelphia*, 963 A.2d 593, 597 (Pa. Cmwlth. 2009). Where "material issues of fact are in dispute, judgment on the pleadings cannot be entered." *Id.*

The Department asserts that its answer and new matter were endorsed with a notice to plead and that because Bundy did not file a reply to new matter, the averments in the Department's new matter—including the allegations that the first Act 84 deduction occurred on June 6, 2013, and that Bundy was placed on notice of the Act 84 deductions by his receipt of monthly inmate account statements—are deemed admitted. The Department argues that Bundy's claims are subject to a two-year statute of limitations and that because Bundy did not file his Petition for Review until more than two years after the first Act 84 deduction, on November 9, 2015, his action is time-barred. The Department contends that there is no genuine issue of material fact that Bundy's claim is time-barred and that, therefore, it is entitled to judgment as a matter

8

of law. Bundy has filed no response to the Department's motion or brief in support of its motion.

Pursuant to Pennsylvania Rule of Civil Procedure 1029, "a responsive pleading shall admit or deny each averment of fact in the preceding pleading." Pa.R.C.P. No. 1029. Further, "[a]verments in a pleading to which a responsive pleading is required are admitted when not denied specifically or by necessary implication." *Id.* We have previously held that a party's failure to reply to new matter permits the "trial court to treat averments contained therein as admitted and authorizes judgment on the pleadings." *Fox v. Pocono Springs Civic Association, Inc.*, 695 A.2d 484, 485 n.1 (Pa. Cmwlth. 1997); *see also Edmond v. Southeastern Pennsylvania Transportation Authority*, 651 A.2d 645, 647 (Pa. Cmwlth. 1994) (holding that where a party fails to reply to a new matter, endorsed with a notice to plead, the averments in the new matter are deemed admitted).

Here, the Department's new matter, which contained a notice to plead, alleges that the first Act 84 deduction occurred to Bundy's account on June 6, 2013. (New Matter ¶6.) The new matter also alleges that Bundy received monthly account statements that would identify any Act 84 deduction, and that Bundy knew or should have known that deductions began in June of 2013. *Id.* ¶6-7. Exhibit B to the new matter is allegedly Bundy's "Sub Account Transaction History," which confirms that the first deduction to Bundy's account occurred on June 6, 2013. (New Matter, Ex. B.) Additionally, the new matter alleges that Bundy filed the Petition for Review in the court of common pleas on November 9, 2015.[5] Bundy did not file a reply to the Department's new matter. Thus, all of the factual allegations in the Department's new matter are deemed admitted.

---

[5] A review of the cover page of the Petition for Review also demonstrates that it was filed in the court of common pleas on November 9, 2015.

9

We next turn to whether Bundy's claim is time-barred by the relevant statute of limitations given that the first Act 84 deduction to his account occurred on June 6, 2013, and Bundy did not file his Petition for Review until November 9, 2015. Bundy titled his action as a 42 U.S.C. §1983 claim as well as a tort claim in replevin.

In general, "a statute of limitations period begins to run when a cause of action accrues; i.e., when an injury is inflicted and the corresponding right to institute a suit for damages arises." *Gleason v. Borough of Moosic*, 15 A.3d 479, 484 (Pa. 2011). Typically, "once the prescribed statutory period has expired, the complaining party is barred from bringing suit." *Id.*

In *Morgalo v. Gorniak*, 134 A.3d 1139 (Pa. Cmwlth. 2016), we extensively analyzed the statute of limitations for actions involving Act 84 deductions. *Id.* at 1145. There, an inmate sought an order requiring the Department to stop all Act 84 deductions and return the money already deducted from his account. *Id.* Examining several different statutes of limitations, we held that section 5524(6) of the Judicial Code, 42 Pa.C.S. §5524(6), applied to the inmate's action. *Id.* at 1149. Section 5524(6) of the Judicial Code provides that "[a]n action against any officer of any government unit for the nonpayment of money or the nondelivery of property collected upon on execution or otherwise in his possession" "must be commenced within two years." 42 Pa.C.S. §5524(6).

Because the inmate's action was against an accounting officer at a state correctional institution, we determined that the action was against an officer of the Commonwealth for the purposes of section 5524(6) of the Judicial Code. *Morgalo*, 134 A.3d at 1148. Further, because the Department made monetary deductions from the inmate's account, which it then transferred to the Montgomery County Clerk of Courts, we concluded that the "'non-delivery of property . . . in [the government unit officer's] possession' requirement of Section 5524(6) of the Judicial Code" had been met. *Id.* at 1149 (quoting 42 Pa.C.S. §5524(6)). Consequently, we held that the

10

inmate's action against the Department for return of his prisoner account funds was subject to a two-year statute of limitations. *Morgalo*, 134 A.3d at 1149. We also determined that the inmate's cause of action accrued on the date of the first Act 84 deduction and that he had two years from that date in which to file his claim. *Id.*[6] Additionally, we concluded that even if the inmate's action could be deemed a federal civil rights action, a two-year statute of limitations would apply because actions brought pursuant to 42 U.S.C. §1983 are subject to a two-year statute of limitations in Pennsylvania. *Id.* at 1149 n.13; *see also Burger v. Borough of Ingram*, 697 A.2d 1037, 1041 (Pa. Cmwlth. 1997) (holding that claims brought pursuant to 42 U.S.C. §1983 are subject to a two-year statute of limitations in Pennsylvania); *Montanez*, 773 F.3d at 480 (holding that a 42 U.S.C. §1983 claim, arising from Act 84 deductions made to a Pennsylvania prisoner's account, had a two-year statute of limitations).

Similarly, here, under either section 5524(6) of the Judicial Code or 42 U.S.C. §1983, Bundy's claim against several Department officials is subject to a two-

---

[6] In two unreported opinions we have reiterated the holding from *Morgalo* that actions involving Act 84 deductions are subject to a two-year statute of limitations under 42 Pa.C.S. §5524(6) and that the cause of action accrues when the first deduction is made. Pursuant to this Court's Internal Operating Procedures, an unreported opinion of the Court filed after January 15, 2008, may be cited for its persuasive value. 210 Pa. Code §69.414(a).

In *Reid v. Department of Corrections* (Pa. Cmwlth., No. 327 M.D. 2015, filed July 17, 2017), in which an inmate sought injunctive relief prohibiting the Department from making further Act 84 deductions from his account, we held that the action was subject to the two-year statute of limitations of section 5524(6) of the Judicial Code, and that the cause of action accrued when the Department made its first deduction. *Id.*, slip op. at 7. Further, in *Young v. Department of Corrections* (Pa. Cmwlth., No. 485 M.D. 2015, filed December 22, 2016), where an inmate claimed the Department improperly deducted money from his account, we held the action was subject to the two-year statute of limitations of section 5524(6) of the Judicial Code. *Id.*, slip op. at 7. We also determined that the inmate had two years from the date of the first deduction to file a claim. *Id.*

11

year statute of limitations.[7] The first deduction from Bundy's account was made on June 6, 2013; therefore, his cause of action accrued on that date. Because Bundy did not file his Petition for Review until over two years later on November 9, 2015, unless the statute of limitations was tolled or an exception applies, Bundy's claim would appear to be barred by the two-year statute of limitations.

The so-called "discovery rule applies to toll the statute of limitations in any case in which a party is reasonably unaware of his or her injury at the time his or her cause of action accrued." *Gleason*, 15 A.3d at 485. Under the discovery rule, "the point at which a party should have been reasonably aware of his or her injury and its cause" fixes the commencement date of the statute of limitations period. *Id.* Here, however, the Petition for Review alleges that the Department began making deductions from Bundy's account after he was committed to a state correctional institution in May 2013, (Petition for Review ¶7), and the new matter and its attached exhibits, which were admitted, allege that the first deduction occurred on June 6, 2013, that Bundy received monthly account statements, and that Bundy knew or should have known that deductions began in June 2013. (New Matter ¶¶5-7, Ex. B.) Thus, because Bundy was aware of the Act 84 deductions to his account, the discovery rule does not apply.

In certain cases, we have also found that a new cause of action accrues each time that a separate and distinct action, or violation, occurs. For example, we have held that "under contracts where installment or periodic payments are owed, **a separate and distinct cause of action accrues for each payment as it becomes due**." *GAI Consultants, Inc. v. Homestead Borough*, 120 A.3d 417, 424 (Pa. Cmwlth. 2015) (emphasis added); *see also*, *American Motorists Insurance Co. v. Farmers Bank and Trust Co. of Hanover*, 644 A.2d 1232, 1235 (Pa. Super. 1994) (same).

---

[7] Similarly, replevin actions also have a two-year statute of limitations. *See Robinson Coal Co. v. Goodall,* 72 A.3d 685, 689 (Pa. Super. 2013).

However, outside of the context of installment contracts, this Court has generally disapproved of "continuing violations" that create ongoing causes of action. *See, e.g.*, *Casner v. American Federation of State, County and Municipal Employees*, 658 A.2d 865, 871 (Pa. Cmwlth. 1995) (holding that the petitioners' continuing violation "rationale would effectively render the limitation period for any cause of action alleging loss of payment meaningless when the payment is received on a regular basis"). In fact, this Court has already determined that Act 84 deductions from prisoners' accounts do not constitute "continuing violations" that create ongoing causes of action. In our *en banc* decision in *Morgalo*, we explicitly declined to treat Act 84 deductions as continuing violations that reset the statute of limitations each time a deduction occurs. 134 A.3d at 1149 n.14. Therefore, we held that the cause of action accrued when the Department made the first deduction. *Id.*; *see also Young*, slip op. at 7 (noting that cause of action accrues at time of first Act 84 deduction and that subsequent deductions are not "continuing violations" that reset the statute of limitations); *Zellie v. Department of Corrections* (Pa. Cmwlth., No. 97 M.D. 2011, filed March 1, 2012), slip op. at 8-9 n.5 (holding that even though Act 84 deductions occurred on a regular basis, they were not continuing violations that created ongoing causes of action).

Further, in *Montanez*, which our Supreme Court relied on extensively on appeal in this case, the Third Circuit held that the continuing violation doctrine did not apply to Act 84 deductions. 773 F.3d at 481. The Third Circuit explained that "a continuing violation is occasioned by continual unlawful *acts*, not continual ill effects from an original violation." *Id.* (emphasis in original) (internal quotation marks omitted). The court noted that the Department's first deduction from Montanez's "prison account constituted a discrete and independently actionable act, which triggered Montanez's obligation to assert his rights," and that subsequent deductions did not make out continuing violations. *Id.*

13

While we have never recognized the continuing violations doctrine in the context of Act 84 deductions, this does not completely resolve the matter of whether Bundy's action is untimely. Before dismissing Bundy's Petition for Review as untimely, we must first analyze an obscure reference to our prior precedent in the Supreme Court's *Bundy* opinion.

In the appeal from our order granting preliminary objections, our Supreme Court spoke approvingly of our past decisions in *George*, 824 A.2d at 396, and *Ingram*, 830 A.2d at 1102. Citing to *Ingram* and *George*, the Court explained that "under prevailing Pennsylvania law as established by the Commonwealth Court," Bundy's claim that he was entitled to an ability-to-pay hearing "would only be implicated in relation to Act 84 deductions if there has been a 'material change of circumstances'— such as a threat of additional confinement or increased conditions of supervision as a result of unpaid financial obligations." *Bundy*, 184 A.3d at 559. The Court noted that Bundy alleged that due to his indigence, the Act 84 deductions had adversely impacted his ability to litigate his PCRA action. *Id.* The Court found "this allegation resonant because the change-in-circumstances prerequisite, as developed by the Commonwealth Court in *George* and *Ingram*, is grounded on the premise that the prisoner can obtain meaningful merits review of the financial aspects of his sentence through direct appeal or post-conviction proceedings." *Id.* The Court concluded that if, as asserted, Bundy's ability to litigate his PCRA action was "substantially encumbered by the Department's Act 84 deductions, an issue arises whether the *George/Ingram* rule should be extended to encompass such a circumstance." *Id.* Yet, the Court determined it was premature to address that question at present. *Id.*

Based on this excerpt, *Bundy* could be interpreted to suggest that a prisoner should be given an opportunity to challenge the Department's Act 84 deductions from his account whenever it negatively impacts his ability to litigate a PCRA action. However, applying our precedent from *George* and *Ingram*, as well as

14

the precedent of our Supreme Court, we decline to conclude that *Bundy* changes our basic precepts regarding timeliness or the statute of limitations in Act 84 actions.

In *Ingram*, an inmate alleged that the sentencing court's failure to hold a hearing prior to Act 84 deductions taking place violated his due process rights. 830 A.2d at 1102. We noted that "'while in custody under sentence, an offender's sole avenues to challenge payment of financial aspects of the sentence are direct appeal and postconviction proceedings'" and that "'[t]hese avenues are adequate remedies at law for an offender in custody to challenge any aspect of the sentence.'" *Id.* (quoting *George*, 824 A.2d at 396). However, we explained that if "'failure to pay sentenced financial obligations exposes an offender to initial confinement, additional confinement or increased conditions of supervision, a hearing is warranted.'" *Ingram*, 830 A.2d at 1102 (quoting *George*, 824 A.2d at 396).

Thus, we held that "[g]arnishment of an inmate's account by corrections authorities does not deny an inmate a pre-deprivation due process hearing" and that "[h]e or she is afforded a hearing on ability to pay at the time of sentencing." *Ingram*, 830 A.2d at 1103. We further concluded that "[a]n inmate is not entitled to another ability to pay hearing **before** Act 84 deductions are taken **unless** there is a material change of circumstances. Changed circumstances include the threat of additional confinement or increased supervision." *Id.* (emphasis added).

*Ingram* and *George* stand for the proposition that where changed circumstances occur, such as an inmate's inability to pay required fines, the inmate is entitled to a hearing regarding his ability to pay the fines after sentencing, but **before** the commencement of **any** Act 84 deductions. These cases do not establish that an inmate is entitled to a hearing, or other means to object, any time that he or she alleges an Act 84 deduction results in materially changed circumstances, but instead, that an inmate is only entitled to a hearing before the commencement of Act 84 deductions if changed circumstances have occurred since sentencing.

15

This premise is bolstered by our Supreme Court's decision in *Buck v. Beard*, 879 A.2d 157 (Pa. 2005), the Third Circuit's decision in *Montanez*, and the Supreme Court's interpretation of both cases in *Bundy*. In *Buck*, an inmate sought an injunction to prevent the Department from deducting funds from his inmate account. 879 A.2d at 158. The inmate argued that he was not afforded due process because the Department did not conduct a hearing to determine the percentage of the monthly Act 84 deduction from his account, prior to deducting funds. *Id.* at 160. Our Supreme Court explained that the crux of the issue before it was "whether due process requires a specific judicial determination of ability to pay before the Department may deduct payments for fines, costs, or restitution." *Id.* The Court held that "in granting to the Department the supplementary power to collect court-ordered financial obligations from inmate accounts, the [General Assembly] recognized that the deducted amounts were relatively small and that it was **impractical and burdensome for trial courts to conduct an ability to pay hearing anytime the funds in an inmate's account fluctuated**." *Id.* at 161. (emphasis added). Thus, the Court determined that due process did not require a judicial hearing regarding the inmate's ability to pay subsequent to his sentencing hearing. *Id.*[8]

In *Montanez*, the Third Circuit noted that it largely agreed with *Buck* in that "Pennsylvania need not provide an additional judicial hearing for every inmate to determine ability to pay before making deductions from their [sic] inmate account when the sentencing court has already considered the inmate's ability to pay when entering the sentence." *Montanez*, 773 F.3d at 485. However, in *Montanez*, the prisoner did not argue that the Department had to provide a judicial hearing prior to the commencement of deductions, but rather, that he had to be given an opportunity to be

---

[8] The Supreme Court concluded that the inmate had been afforded the necessary due process regarding his ability to pay Act 84 deductions at his sentencing hearing. *Buck*, 879 A.2d at 160-61.

heard on objections to the amounts **prior** to the deductions. *Id.* The court concluded that due process required that inmates be given "a meaningful opportunity to object to the application of the [Department] [p]olicy to their inmate accounts **before the first deductions commence**." *Id.* at 486 (emphasis added). The court explained that the Department did not need to "provide each inmate with a formal, judicial-like hearing before the onset of deductions." *Id.* The court also clarified that it did "not mean to suggest that inmates must have an opportunity to be heard **prior to each deduction**." *Id.* (emphasis added). Thus, the court held that due process was satisfied as long as the Department, after providing the required initial notice regarding deductions, "provide[d] inmates with an informal opportunity to supply written objections to prison administrators **prior to the first deduction**." *Id.* (emphasis added).

Finally, on appeal from our previous order in *Bundy*, the Department argued that the Court should follow *Buck* instead of the Third Circuit's decision in *Montanez*. *Bundy*, 184 A.3d 551. Noting that *Buck* controlled some aspects of the case, our Supreme Court then distinguished *Buck* from *Montanez*, concluding that *Buck* "established that due process does not require the Department to arrange for a **judicial ability-to-pay hearing before making deductions**," but, as the Third Circuit recognized in *Montanez*, "*Buck* did not deal with whether any sort of **administrative** pre-deprivation process is constitutionally required before the **first deduction** is made." *Bundy*, 184 A.3d at 558 n.5 (first two emphases in original). The court also explained that *Montanez* "pointed out that other jurisdictions require at least some process **before the first deduction is made**," and that due process required the Department to afford "some means—even if informal—'for inmates to object to potential errors in the deduction process' **before the first deduction occurs (although not before subsequent deductions**)." *Bundy*, 184 A.3d at 558 (emphasis added) (quoting *Montanez*, 773 F.3d at 486). Therefore, relying on *Montanez*, the court held that "to comply with due process, the Department must, **prior to the first deduction** .

17

. . give the inmate a reasonable opportunity to object to the application of the Department's policy to his account." *Bundy*, 184 A.3d at 558-59 (emphasis added).

In sum, both *Montanez* and *Bundy* held that due process only requires that a prisoner be given an opportunity to object **prior to the first deduction**. Moreover, both our decision in *Ingram* as well as our Supreme Court's decision in *Buck*, which were both discussed by our Supreme Court in *Bundy*, support the conclusion that due process only requires that a prisoner be granted **some type** of hearing on his or her ability to pay Act 84 deductions **before** the first deduction occurs. Thus, despite the potential suggestion in *Bundy* that a prisoner may be entitled to an ability-to-pay hearing, or means to object, to deductions whenever there is a material change of circumstances, based on the language used by the Supreme Court in its actual holding in *Bundy*, as well as the Court's extensive reliance on *Montanez* in the same opinion, we conclude that due process does not entitle a prisoner to be given the means to object to **any** Act 84 deduction that he or she alleges materially changes his or her circumstances.

It is undisputed that Bundy's first Act 84 deduction occurred on June 6, 2013, but Bundy did not file his Petition for Review until more than two years later on November 9, 2015. Because Bundy's claim had a two-year statute of limitations and our binding precedent in *Morgalo* proscribes us from treating Act 84 deductions as continuing violations, we are constrained to conclude that Bundy's claim is untimely.

**Conclusion**

Accordingly, because Bundy's Petition for Review is barred by the two-year statute of limitations, we grant the Department's application for summary relief in the nature of a motion for judgment on the pleadings and dismiss the Petition for Review, with prejudice.

_____
PATRICIA A. McCULLOUGH, Judge

19

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kevin A. Bundy,                          :
                   Petitioner            :
                                         :    No.  553 M.D. 2016
          v.                             :
                                         :
John E. Wetzel, Secretary, PA            :
Department of Corrections, Tammy         :
Ferguson, Superintendent, SCI            :
Benner Township and Frank                :
Dougherty, Business Manager,             :
SCI Benner Township,                     :
                   Respondents           :

## ***ORDER***

AND NOW, this 12th day of April, 2019, Respondents' application for summary relief in the nature of a motion for judgment on the pleadings is granted. Kevin A. Bundy's Petition for Review is dismissed with prejudice.

_____
PATRICIA A. McCULLOUGH, Judge